No. 33.—WILLIAM C. POE, administrator &c., plaintiff in error, *vs.* GEORGE SCHLEY, defendant.

[1.] By will, C appointed S to act as guardian of the property of his children; at the same time, appointing others to act as guardians of their persons. After C's death, his children inherited property from an uncle. S, as guardian, under the will, sued the uncle's administrator for this property, without making it appear that he had given bond and security, for the proper management of the property: *Held*, that S had no right to recover the property from the administrator.

In Equity, in Bibb Superior Court. Decided by Judge POWERS, January Term, 1854.

The facts in this case are as follows :

On the 16th of April, 1851, Charles Cunningham executed his last will and testament, by which he constituted and appointed Mrs. Eliza F. Poe, and Mrs. Ellen Fitzsimmons, the personal guardians of this children, " to conduct their education and raising," &c. &c.

The second item provides, that George Schley shall act as the *guardian of the property* of the children, &c. &c.

This will further appoints John Bones, Owen Fitzsimmons, George O. K. White and William J. Eve, executors, who had it admitted to probate on the 5th of May, 1851, Cunningham having died before that time.

On the 18th day of May, 1851, George O. K. White died, leaving a large estate and intestate; to one share of which estate, the children of said Cunningham were entitled, in right of their mother, the sister of said White, who died before her husband. William C. Poe administered on his estate, and this bill is filed by said George Schley, as testamentary guardian of the property of said children, under *Stat. Ch's. II.* Plaintiff in error demurred to said bill, on the ground that it is not alleged in said bill, that complainant has been appointed by the Ordinary, guardian of said minors, for their distributive share of said George White's estate; nor does it appear, that he has given bond and security, under the statute.

The Court over-ruled the demurrer; to which decision the defendant excepts.

Poe, Nisbet & Poe, for plaintiff in error.

G. J. & W. Schley, for defendant.

*By the Court.*—Benning, J. delivering the opinion.

[1.] The question is, whether George Schley, having no right as guardian, except such as he derived from the will of Charles Cunningham, was entitled, as guardian, to demand of Wm. C. Poe, as administrator of Geo. O. K. White, the share of the estate of White which the minor children of Cunningham, after his death, inherited from White, who was their uncle.

The first section of the Act of 1851, "to secure the property of minors against the mismanagement of their guardians, by requiring bond and security," is as follows: "That from and after the passage of this Act, whenever any child or children shall have any guardian, by Statute appointed, or by the deed or will of the father or mother of said child or children, and any property shall descend to said child or children, by virtue of the Act of Distributions, or of any will, deed or gift, other than from said parents, it shall be the duty of the Court of Ordinary, executors, administrators or trustees, as the case may be, having the control of said property, to withhold said property from said guardian, until bond and good security be given, as in other cases of guardianship, to be judged of by the Court of Ordinary: Provided, that if such guardians shall fail or refuse to give such bond and good security, said Court may appoint some other fit and suitable person to act as such, first compelling said person to give bond and good security, as is now required in other cases of guardianship".

It does not appear that Mr. Schley had given the bond and security required by this Act.

It follows that he was not entitled to bring this suit against Mr. Poe, the administrator, if his case is within this Act.

Is his case not within the Act? Does the Act include the case of no guardian, who was a guardian at the time of the passage of the Act? And Mr. Schley was a guardian at that time.

The words of the Act, taken fairly, will include guardians existing at the time of its passage. This will plainly appear, if, in reading the words, we omit those which I will enclose in brackets: "That from and after the passage of this Act, whenever any child or children shall have any guardian [by Statute appointed, or by the deed or will of the father or mother of said child or children,] and any property shall descend," &c.

And the words in brackets do not affect the sense, perhaps, at all. They seem to be intended to show the *kinds* of guardians meant to be reached by the Act—as all guardians appointed by the deed or will of a parent, and not to be intended to show that only some of each of these kinds were meant, viz: such as might come into existence *after* the passage of the Act. If they were intended merely to show the kinds meant, it may admit of a doubt whether they affect the sense at all; whether the kinds of guardians they express are not all the kinds which exist; and whether, therefore, the words amount to anything more than an enumeration of particulars which, if the enumeration had been omitted, would have been necessarily implied in the general words, "any guardian". It may be doubted whether, by the law of Georgia, there can be any guardian of property, except, perhaps, some temporary guardian, as one *ad litem*, unless that guardian be appointed under a Statute, or by the will or deed of a parent. See *Act of* 1823, (*Cobb*, 322.)

But certainly, if this were what the words were intended to show, then they do not so affect the sense as to make it exclude from the Statute, the case of a guardian who was existing as such, at the time of the passage of the Act.

And if the words will fairly take in the case of such a guardian, the reason will certainly do the same, and more too. The reason will no more allow the case of such a guardian to

remain outside, than it will the case of a guardian appointed subsequent to the passage of the Act. The reason is, "to secure the property of minors against the mismanagement of their guardians"; a reason which extends to guardians appointed *before* the passage of the Act, perhaps, in an especial manner, as it must have been the "mismanagement" of such that constituted the mischief which occasioned the passage of the Act.

The case of this guardian, Mr. Schley, therefore, was included within this Act.

But even if this Act did not exist, what is there to give Mr. Schley a right, as guardian, to make this demand upon Mr. Poe, the administrator. The will and the Statute of 12 *Charles II.* (*Schley's Dig.* 242.) But the will appoints Mr. Schley to "act as the guardian of the *property*" of the minors; at the same time appointing other persons "personal guardians" of the minors themselves, and the Statute of *Charles* gives leave to the father "to dispose of the *custody* and *tuition* of his child or children"; that is, to appoint a guardian, not for the *property*, but for the *persons* of his children. Does this Statute, then, authorize Mr. Cunningham's appointment of Mr. Schley to the guardianship of any property, even such property as he, himself had, when he was making the appointment, to say nothing of property which he never had, but which, after his death, was to fall to his children, by inheritance, from an uncle? It is a most doubtful question, especially when it is remembered that Mr. C. had also appointed "personal guardians" for his children, and that the ninth section of the same Statute of *Charles* declares that the personal guardian shall take the profits of the children's lands, and the custody, &c. of their goods.

We think the demurrer ought to have been sustained to the bill; and therefore, that the judgment over-ruling the demurrer, ought to be reversed.