HUSON, administrator, *v.* GREEN *et al.*

A surety upon the bond of a guardian appointed in 1867 is liable upon the bond, to the extent of the penalty thereof, for all property or money belonging to the ward received by the guardian from any source whatever after the execution of the bond, and wasted, misapplied or not duly accounted for.

February 3, 1892.

Guardian and ward. Bond. Statute. Before Judge GAMBLE. Rockdale superior court. March term, 1891.

The action was upon the bond of A. H. Zachry as guardian of Sarah and Loucinda Reed, orphans of Samuel P. Reed, dated February 4th, 1867. In evidence appeared the returns of the guardian up to December 8, 1879. In these returns, under date of June, 1873, it appears that the guardian charged himself with "cash C. T. Zachry, adm'r of J. B. Zachry, $6 10" ; under date of January 1, 1874, with "cash rec'd of C. T. Zachry, adm'r of James B. Zachry dec'd, $635.31"; under date of January 8, 1874, with "am't rec'd from C. T. Zachry, adm'r of James B. Zachry, $453 32" ; and under date of 1878, with "cash rec'd from C. T. Zachry, adm'r of J. B. Zachry dec'd, $52.79." These portions of the returns were excluded from evidence by the court. The

ordinary of Rockdale county testified that James B. Zachry died in that county in 1871, about May, and C. T. Zachry was his administrator. The guardianship was in Newton, this suit was in Rockdale county.

After verdict for the defendant, the court granted a new trial for error in excluding from evidence the above stated portions of the guardian's returns, which grant is assigned as error by the administrator of the surety on the bond.

A. M. SPEER and STEWART & DANIEL, for plaintiff in error.

GEORGE W. GLEATON, contra.

BLECKLEY, Chief Justice.

The bond declared upon in this case was executed on the 4th day of February, 1867, and the amount of the penalty is twelve hundred dollars. The bond recites that "whereas the said Alfred H. Zachry is this day appointed guardian to Sarah Reed and Loucinda Reed, orphans of Samuel P. Reed, deceased," and is conditioned to be void "if the said Alfred H. Zachry do well and truly demean himself as guardian aforesaid, agreeably to letters of guardianship bearing even date herewith, and agreeably to law in such case made and provided." In the absence of further evidence as to the character of the guardianship, and there is no other in the record, it must be assumed that the guardian derived his appointment from the ordinary and that the guardianship was general in its scope, extending both to person and property. The appointment is provided for by §1806, and the bond by §1812 of the code. A part of §1814 reads as follows: "If at any time after the appointment other property shall descend, or come, or be given, or otherwise accrue to the ward, the ordinary may require the guardian to give an additional bond with security in double the amount of such property, and on his failure to comply, the ordinary may appoint a special guar-

dian for such property." It is contended that by virtue
of this provision a general guardian has no legal author-
ity to receive assets which accrue to the ward pending
the guardianship, but that the authority and the opera-
tion of the bond originally given are confined to prop-
erty or money which belonged to the ward when the
appointment was made and the bond given. In this
case the grandfather of the wards died in 1871, and
they derived assets from his estate, which their guar-
dian, in that year and subsequent years, received and
charged against himself in his returns made as guardian
to the ordinary. The contention is that his authority
did not extend to these assets, and consequently that
his bond did not cover them. This is not sound. "The
ordinary *may* require the guardian to give an additional
bond with security." This is a discretionary power.
Moreover, the additional bond, if required, would be
cumulative and not exclusive as to these assets. Schoul-
er's Dom. Rel. p. 550, §367; 4 Field's Briefs, §54.
Without some order of discharge, the surety on an ex-
isting bond is liable for future default of the principal,
though an additional bond be taken. *Stewart* v. *John-
ston,* 87 *Ga.* 97. The original bond, not being restricted
to any class of assets, would operate as to all alike, no
matter when title to them accrued or when they were
received, provided they were received whilst the guar-
dianship was on foot and the letters in full force. For
any assets so received and afterwards wasted, misap-
plied or not duly accounted for, the surety on this bond
is liable to the extent of the penalty named therein.
The case of *Poe* v. *Schley,* 16 *Ga.* 364, has no applica-
tion; for in that case the guardian was appointed by
the father's will, and the authority of such a guardian
to receive assets without giving bond and security was
then, and still is, restricted to assets derived from the
source of the appointment. Code, §§1804, 1805; Acts

1851–2, p. 101. The bond provided for in the case of a testamentary guardian is not an additional bond, but a first bond, and to require it is not discretionary with the ordinary, but he "shall require the same." The case of *Poe* v. *Schley, supra,* was decided correctly on its facts, no matter what view may be taken of the extent of the words, "Whenever any child or children shall have any guardian by statute appointed, or by the deed or will of the father or mother of said child or children." It is well known that the phrase "guardian by statute" designates in the English law a guardian appointed by the father's will. It is not improbable that the words "any guardian by statute appointed" as used in the act of 1851 may simply have been intended as the equivalent of the enumeration following those words, that is "by the deed or will of the father or mother of said child or children." For the act proceeds to require bond and security only in case property shall be derived from persons other than the parents. If the statute intended to apply to guardians appointed by the ordinary by virtue of the general statute law of the State, it is not likely that property derived from the parents would have been excepted from the requirement to exact bond and security as a condition of receiving it. Why should the ordinary's appointment serve to exempt the guardian from giving bond and security as to property derived from the parents any more than as to property derived from others? It was not necessary in *Poe* v. *Schley* for the court to construe the statute any further than as it related to a testamentary guardian. And we have seen that the scheme of the code is to require bond and security in the first instance from all general guardians appointed by the ordinary, and to invest the ordinary with discretionary power to require additional bond and security when the estate of the ward is enlarged by subsequent acquisition no matter from what

source.    The code, and not the act of 1851 as it origi-
nally stood, governs the case now before us ; for the code
was in force when this guardianship originated.    See
Code of 1863, §§1755, 1756, 1757, 1763, 1765, which are
the same in their provisions relating to this subject as
the sections above cited from the Code of 1882.

The court erred in rejecting evidence and rightly cor-
rected the error by granting a new trial.

*Judgment affirmed.*