REMINGTON, ordinary, for use, etc., *v.* HOPSON *et al.*

ROUNTREE, executor, *v.* REMINGTON, ordinary, for use, etc.

WILSON *v.* REMINGTON, ordinary, for use, etc.

1. Where a guardian's bond was executed for a specified amount, and subsequently, after one of the sureties had died leaving an insolvent estate, and other property had come into the hands of the guardian, the mother of the wards, being one of the sureties on the bond, instituted a proceeding under the Civil Code (1910), §§ 3049, 3050, to require the guardian to give other and additional security, and on his failure to do so to have the letters of guardianship revoked and another person appointed, and in this proceeding an order was granted requiring the guardian to give other and sufficient security, etc., and the guardian subsequently executed a new bond for a less amount, with new sureties, such second bond was cumulative, and the sureties thereon were cosureties with those on the first bond for any past or future waste.

(a) In a suit by the obligee against the sureties on the second bond for a devastavit, those on the first bond were not necessary parties, and in the absence of equitable grounds the sureties on the second bond were not entitled to have those on the first bond made parties to the suit for the purpose of adjusting the rights between the several sureties.

2. In a suit of the character mentioned in the preceding headnote, it was error for the judge to refuse to strike so much of the pleas of the sureties on the second bond as sought to set up the invalidity of the bond on the ground that it misrecited the date of the appointment of the guardian.

3. Where, in a suit on a guardian's bond against the principal and sureties, the sureties denied the amount of the liability alleged, the fact that upon the trial the amount of the devastavit committed by the guardian was agreed upon by the parties did not make it erroneous to refuse to strike from the answer the denial of such amount.

4. Where a plaintiff brought suit on a guardian's bond, and in one paragraph of his petition alleged that the defendants were indebted to him in a certain amount, without more, and one of the defendants denied it, there was no merit in a motion to strike such responsive part of a paragraph of the answer on the ground that "a simple denial of the indebtedness is not a legal defense to a suit on a bond."

5. Where a plaintiff causes to be certified exceptions pendente lite, assigning error upon numerous rulings of the court, and in the main bill of exceptions assigns error on the pendente-lite exceptions and the overruling of a motion for new trial, and in his brief states that he "insists upon each and every assignment of error, but because of the fact that many of these are practically identical, and some overlap others, the errors complained of will be classified and insisted upon in the following questions," and following this statement are grouped the various legal propositions insisted upon, an assignment of error not embraced in such legal propositions as stated, nor otherwise alluded to in the brief, will be treated as abandoned.

6. Under the pleadings and evidence, if the plaintiff was entitled to recover at all, he was entitled to recover from each of the sureties on the second bond the full amount of the devastavit; and it was erroneous as to him to divide the devastavit and find in his favor only a part against the sureties on such bond and a part against the sureties on the first bond.

7. The second bond was given under an order granted by the ordinary in a proceeding for additional security, under the Civil Code (1910), §§ 3049, 3050, and was merely cumulative to the first, and did not operate to discharge one of the sureties on the first bond under an order previously granted by the ordinary in a proceeding for a discharge under the Civil Code (1910), § 3052. The sureties on both bonds were cosureties in proportion to the amounts of the respective bonds, but the suit being at law, and the plaintiff not having elected to sue the sureties on the first bond, and no equitable reasons being alleged which would authorize the sureties on the second bond to require those on the first bond to be made parties, it was erroneous for the judge, over objection of one of the latter, to order that the one so objecting be made a party.

8. While a trial judge may, within the restrictions prescribed by the Civil Code (1910), § 5926, direct a verdict, this court will in no case reverse a judgment refusing to do so.

NOVEMBER 15, 1911.

Action upon bond. Before G. A. Whitaker, judge pro hac vice. Brooks superior court. August 25, 1910.

*Stanley S. Bennet* and *L. W. Branch,* for plaintiff.

*W. H. Griffin, H. A. Mathews, Edmondson & Edmondson, Russell Snow, W. H. Long,* and *J. D. Wade,* for defendants.

ATKINSON, J. On January 4th, 1892, J. W. Hopson was appointed guardian of the person and property of Willie Lee Hopson and Ralph B. Hopson, minor children of I. B. Hopson, deceased. As such guardian he executed bond. Subsequently, to wit, July 6th, 1896, on application of Mrs. Jessie B. Wilson, formerly Hopson, the mother of the wards, who had signed as one of the sureties on the bond above mentioned, the guardian, by order of the ordinary, executed a second bond, with a different set of sureties. Afterwards, upon an alleged devastavit, the ordinary, disregarding the first bond, instituted suit against the principal and the sureties on the second bond only. No demurrer was filed, but the defendants, Cicero N. Williams, Wesley W. Wade, A. J. Conoly, and Z. T. Knight, uniting in one answer which was afterwards amended, and Mrs. Hannah Mathews, as executrix of S. M. Mathews, making a separate answer which was afterwards amended, and S. S. Rountree, as executor of the will of Mitchell Brice, making a separate answer which was afterwards amended, among other things set up

the existence of the first bond, and certain defenses which will be stated in this opinion, and prayed that the sureties on the first bond be made parties, etc. By order of the court the sureties on the first bond were made parties, and one of them, Mrs. Jessie B. Wilson, excepted pendente lite to the order making her a party. The plaintiff moved to strike certain portions of the several answers of the defendant sureties on the second bond, and excepted pendente lite to the order of refusal. At the trial certain evidence was introduced in addition to an agreed statement of facts. By the terms of the latter the amount of the devastavit was agreed upon. The verdict declared, among other things, for the plaintiff for that amount, but prorated it in such manner as to make it a finding against the sureties jointly on the first bond for a part thereof, and against the sureties on the second bond for the balance, thus failing to charge the sureties on either bond' for the full amount of the devastavit. The plaintiff moved for a new trial, on the general grounds, which was refused, and he excepted. In the bill of exceptions, in addition to assigning error on the judgment refusing a new trial, error was also assigned by the plaintiff on his exceptions pendente lite to the judgment refusing to strike certain portions of the answers. The defendant Mrs. Jessie B. Wilson filed a cross-bill of exceptions, assigning error on her exceptions pendente lite to the order making her a party. S. S. Rountree, as executor of the estate of Mitchell Brice, filed a separate cross-bill of exceptions, but his only assignment of error was upon his exceptions pendente lite to the refusal of the judge to direct a verdict in his favor.

1. The main bill of exceptions assigned error on exceptions pendente lite filed by the plaintiff in the trial court, which complained of the refusal to strike certain parts of the answer of S. S. Rountree, as executor of the estate of Mitchell Brice, and also certain parts of the answers of Cicero N. Williams, Wesley W. Wade, A. J. Conoly, and Z. T. Knight, all of whom were sureties on the second bond, and also a part of. the answer of Mrs. Hannah Mathews, as executrix of the will of S. M. Mathews, who was also a surety on the second bond. The parts of the several answers referred to set up the existence of the first bond, and alleged that if the sureties on the second bond were liable at all they were not liable for waste committed prior to the date of their bond, but only liable jointly and ratably with the sureties on the

first bond for waste committed since the date of the second bond, and prayed that the sureties on the first bond be made parties to the action, so that the liabilities of all the sureties might be determined in one action, thus avoiding circuity of action and a multiplicity of suits. The ground to strike the parts of the answers above referred to was, that, as a matter of law, the sureties on the first bond were not jointly liable with the sureties on the second bond, and that the sureties on the second bond were liable for past as well as future waste. The first bond was for $40,000. The second, which was executed some three years later, was for $30,000. The two bonds were of character as will be indicated, and were executed under the circumstances following, to say: In 1893 Mrs. Hopson, the mother of the wards, who had signed as one of the sureties on the first bond, filed with the ordinary a petition alleging: that John S. Hopson, one of the sureties, and the largest property owner who had signed the bond, had died; that she was the mother of the two minors, and desired that the estate of her husband be protected by giving a solvent bond; that she was alarmed about the result of her suretyship, and thought herself in great danger of suffering therefrom. She prayed that the court of ordinary would pass an order requiring the guardian to relieve her from the bond, and also give new and additional security, so that she might be saved harmless. A rule nisi was issued, and at the October term an order was passed that Mrs. Hopson, who had become Mrs. Wilson by a second marriage, "be relieved as a security on J. W. Hopson's bond," and the guardian be required to give additional security at the next term of court. This was a proceeding under section 3052 of the Civil Code of 1910. By that section it is provided, however, that: "such discharged surety shall be relieved only from the time the new security shall be given," and that "If new security is not given, and the guardian's trust is revoked, the discharged surety shall be bound for a true accounting of such guardian with the new guardian, or his ward if no other guardian is appointed." It appears that no bond was given, and no new guardian appointed. Thus the matter stood until 1896, when Mrs. Wilson again filed a petition in the court of ordinary. In this she recited the appointment of the guardian, his qualification, and the giving of the bond, the filing of the former petition by her, and that the ordinary had passed an order

discharging her as a surety from all further liability. She also alleged that J. S. Hopson, a surety on the bond, died leaving an insolvent estate, as she was informed, and that the guardian had received for his wards, otherwise than from the guardian estate, money amounting to $10,000. She charged that the security on the bond was insufficient, and prayed an order requiring the guardian "to give other and additional security, and on his failure to do so to revoke his letters of guardianship and appoint some other person in his place." Upon hearing this petition the ordinary passed an order requiring the guardian "to give other and sufficient security as guardian for Ralph and Willie Lee Hopson," and declared that on his failure to do so his letters of guardianship should be revoked. It was under this order that the second bond was given. The petitioner did not allege a failure to obey the former order, and ask the removal of the guardian. On the contrary, she sought, for various reasons, not to relieve herself but to secure the wards. From a consideration of the petition and order, the second proceeding was under the Civil Code (1910), §§ 3049, 3050. It was not a proceeding merely to have an additional bond given on account of new property which had accrued to the wards, but, in view of the decrease in the security of the original bond, and of the increase of property in the hands of the guardian, it was a proceeding to require new and additional security, as provided in the sections last cited. The second bond had the form of a guardian's bond given upon an appointment then made. Under these circumstances, was the second bond cumulative, and were the sureties on it cosureties with those on the first bond, relatively to past as well as future waste, and were the sureties on the second bond entitled to have the liabilities between themselves and the sureties on the first bond adjusted and declared in this suit? Section 3049 of the Civil Code states, that, upon ascertainment that the original bond is insufficient, "it shall be the duty of the ordinary to give to the guardian notice to come forward at the next term of the court and give additional security to said ordinary, or give a new bond with good securities." If new securities had been added to the first bond, it is clear that they would have been cosureties with those already on it. The fact that the additional security was given in the form of a new bond for the proper conduct and accounting of the guardian did not prevent the two bonds from being cumula-

tive. Neither this statute nor section 3050 provides for discharging one set of securities and substituting another, but for adding security to that which has already been given. The original bond remains of force, and the new bond is cumulative or additional security for the benefit of the wards. As between the obligee of the bonds and the sureties on them, all are liable for a devastavit, to the extent of the bonds which they respectively signed, for past as well as future waste. As among themselves, they occupy the position of cosureties, and the liabilities of the sureties on the two bonds are in proportion to the size of such bonds. *Huson* v. *Green*, 88 *Ga.* 722 (16 S. E. 255) ; *Stewart* v. *Johnson*, 87 *Ga.* 97 (13 S. E. 258) ; Schouler on Domestic Relations, § 367; 4 Field's Briefs, § 54. Perhaps the plaintiff might have brought suit on both bonds; but he did not elect to do so, as did the plaintiff in the case of *Sutton* v. *Williams*, 77 *Ga.* 57 (1 S. E. 175), in which there was a discharge of a surety under section 3052. He sued only on the last bond. While they were cumulative securities, he could not be compelled to sue on both at law, unless there were special equitable reasons which would require the bringing in of all the sureties, but he could proceed against the sureties on one bond. He has prayed no judgment against the sureties on the first bond. Can the defendants, who were sureties on the second bond, do so for him and obtain a judgment, not for themselves alone, but for the plaintiff? If not, then the result of bringing in the sureties on the first bond would be not the rendition of a judgment against them in favor of the plaintiff, but the entering of a judgment on the second bond, and a mere side adjudication that the defendants and the sureties on the first bond stood in a certain relationship. We do not think that the sureties on the first bond were necessary parties to the plaintiff's suit on the second bond, so that the sureties on it could compel the plaintiff to bring them in as codefendants and sue them at the same time. Indeed, the sureties on the second bond have not attempted to do so, but have simply prayed that the sureties on the first bond be brought into the action as parties, so as to save a multiplicity of suits. No sufficient reason for equitable relief is alleged by the sureties on the second bond, and they show no right to require them to be made parties. If there is any right of contribution between the sureties on the respective bonds, that can be determined in a proceeding at the

proper time and in an appropriate way. This case is somewhat analogous to one where a plaintiff might bring suit upon a joint and several liability against some of the obligees, but might not care to proceed against all. Those sued could not compel him to bring in the others, nor could they themselves bring them into the plaintiff's suit merely because there might be a right of contribution after a recovery by the plaintiff. *McDougald* v. *Maddox,* 17 *Ga.* 52; *McDougald* v. *Maddox, 32 Ga.* 63.

2. The main bill of exceptions also complained of the refusal of the judge to strike certain parts of the answers of the defendants named in the preceding division, which set up that the second bond was void because it contained a false recital as to the date of the appointment of the guardian, it being recited that he was appointed on the date of the execution of the bond, which was the 6th day of July, 1896, whereas in fact the appointment had been made more than four years previously, to wit, in 1892. The ground of the motion to strike was that the defendants having signed the bond were estopped from denying its recitals. On this point the answer of Mrs. Mathews went further than that of the other defendants, and alleged that the second bond was executed with the express understanding that Hopson on the date of that bond was appointed guardian, when in fact he had not been so appointed, and had not since that date been appointed, and therefore that no liability could have arisen on the bond against her. The second bond having been given as a cumulative bond, in the manner already recited, the sureties thereon were liable for any devastavit, of the principal from the time of his appointment, and not merely from the time the bond was given. The fact that the bond misrecited the date of his appointment, stating it as of the date of the bond, did not change this or make the bond invalid. It was given by virtue of proceedings in court, under an order of the court requiring it. In response to such order the principal and his sureties gave the bond, and satisfied the requirements of the court. By doing so, they saved the guardian from being deposed from office, and allowed him to proceed with his administration. If in doing so they erroneously recited the time of his appointment, this would not relieve them from the burden the statute imposed upon them. The judge accordingly erred in refusing to strike the part of the answer which set up the erroneous recital in the bond, of the date

of the appointment, as a defense. What has been said applies to the plea of Mrs. Mathews as well as to those of the other defendants.

3. Error was also assigned upon the refusal of the judge to strike a part of the answer of certain of the defendants which set up: that in the proceeding by the ordinary in which the judgment had been rendered declaring a devastavit the ordinary did not examine the return of the accounts of the guardian and examine witnesses, as alleged, but that if any such judgment was signed at the time it was done without a trial and without the introduction of evidence, and therefore that the judgment was void; also that if the guardian owed the wards any sum at the date of the judgment, it was greatly less than declared by the ordinary. The ground of the motion to strike such part of the answers was that "the amount had been agreed upon by all parties," and the defense was "eliminated by consent." There was no merit in this motion.

4. Error was also assigned upon the refusal of the judge to strike the first paragraph of the answer of Mrs. Mathews, which merely denied that "she is indebted in any sum to the plaintiff in said case in manner and form as claimed." The ground of the motion to strike was because a simple denial of the indebtedness is not a legal defense to a suit on a bond. This answer was merely responsive to the allegations of a paragraph of the plaintiff's petition, which alleged that the defendants were indebted to him in a certain amount, without more. The motion to strike was without merit.

5. One of the exceptions pendente lite upon which error was assigned in the main bill of exceptions complained of the refusal of the judge to strike an amended plea filed by Wesley W. Wade and A. J. Conoly, setting up their discharge in bankruptcy. For reasons indicated in the fifth headnote this assignment of error will be treated as abandoned.

6. The last assignment of error in the main bill of exceptions related to the order of the court overruling the motion for new trial, which was based on the usual general grounds. The verdict which was rendered divided the liability to the plaintiff between the sureties on the two bonds, and also included matters which were not proper under the rulings heretofore made. Under the pleadings of the plaintiff, if he was entitled to recover at all, he

was entitled to recover from each of the sureties on the second bond for the full amount of the devastavit, and it was erroneous as to the plaintiff to divide the devastavit and find in his favor only a part against the sureties on that bond and a part against the sureties on the other bond.

7. When application was made by the defendant sureties on the second bond to have the sureties on the first bond made parties to the suit for the purposes mentioned in the first division of this opinion, Mrs. Jessie B. Wilson filed objections, setting up (a) non-liability to the plaintiffs; (b) that she was not a cosurety with the defendants on the second bond; and (c) that by the order of the ordinary dated July 6th, 1896 (to which reference has been made in the first division of this opinion), the sureties on the second bond were given by the guardian as additional sureties, and therefore that she was released and discharged as a surety under authority·of the order dated September 20th, 1893 (which has also been referred to in the first division of the opinion). This objection was overruled, and Mrs. Wilson was made a party. Error was assigned upon this ruling in the cross-bill of exceptions. This assignment of error is controlled by the rulings announced in the first division. The second bond was not executed under the order of the ordinary passed in 1893, in a proceeding under section 3052 of the Civil Code, but under the subsequent order granted in 1896, in a different proceeding, under sections 3049 and 3050. Mrs. Wilson, therefore, was not discharged as a surety, but continued to be such, and the second bond being merely cumulative to the first, her relation to the sureties on the second bond was that of a cosurety in proportion to the amount of the respective bonds. But as the plaintiff did not sue the sureties on the first bond, and no equitable reasons appeared which authorized the defendant sureties on the second bond to require the sureties on the first bond to be made parties to the suit, it was erroneous for the court to pass an order making them parties.

8. S. S. Rountree, as executor of the estate of Mitchell Brice, after all the evidence was submitted, moved the court to direct a verdict in his favor, and in a separate cross-bill of exceptions assigned error upon the refusal of the judge to direct such verdict. While the trial judge may, within the restrictions prescribed by the Civil Code (1910), § 5926, direct a verdict, this court will in no case reverse him for refusing to do so. *Green* v. *Scurry,* 134

*Ga.* 482 (68 S. E. 77), and cases cited in 13 Michie's Dig. 565, subsection D.

*Judgment reversed on the main bill of exceptions and the crossbill of exceptions filed by Mrs. Wilson, and affirmed on the crossbill of exceptions filed by Rountree, executor.*

*All the Justices concur, except Beck, J., absent, and Hill, J., not presiding.*