DECIDED SEPTEMBER 1, 1928.

*W. P. Wallis, Hollis Fort,* for plaintiff in error.
*Bennet & Peacock, W. W. Dykes,* contra.

18372, 18373. FIDELITY & DEPOSIT COMPANY OF MARYLAND *v.* NORWOOD, ordinary, for use, *et al.;* and *vice versa.*

DECIDED SEPTEMBER 1, 1928.

*Underwood, Haas & Gambrell, Jay & Garden,* for plaintiff in error.

*J. B. Wall, A. J. McDonald,* contra.

BELL, J. J. I. Norwood, as ordinary, brought suit against W. D. Branch as principal and Fidelity and Deposit Company of Maryland as surety upon a guardian's bond. The suit was defended only by the surety company, and the term defendant as used herein

will refer to that party; and although there is a controversy. as to the time when the guardianship began, we may for convenience refer to Branch as guardian, irrespective of the legal contention between the parties upon that point. After the petition and the answer were both amended and after the court had overruled the defendant's general and special demurrers to the petition and sustained a demurrer of the plaintiff to a part of the defendant's answer, the case was referred to the Honorable Hal Lawson as auditor, and he made findings of fact and findings of law, and concluded that the plaintiff should recover. To this report no exceptions were filed by the plaintiff. Numerous exceptions to it, however, were filed by the defendant. The plaintiff moved to strike all of these exceptions, upon the ground that each of them failed to set forth the material evidence or to point it out in the brief of evidence. The case as thus made was submitted to the court, without a jury, for the further necessary proceedings and for final determination. The presiding judge overruled the plaintiff's motion to strike the defendant's exceptions and, after sustaining some of the exceptions and overruling others, rendered final judgment in favor of the plaintiff; and to this judgment the defendant excepted.

The plaintiff also sued out a bill of exceptions, in which, besides excepting to certain antecedent rulings, he assigned error upon the final judgment because the court refused a part of the claim as to interest.

In our view of the case the rulings made in the opinion below are controlling, making it unnecessary to deal specifically and in detail with all of the many exceptions and assignments. In the state of the record there is no question in this court as to the existence of any basic fact as found by the auditor, though some of his inferences or conclusions, especially his conclusions of law, are drawn in question. Therefore, this court is not required to determine whether any finding of fact was or was not authorized by the evidence, but the facts as they are presented by the auditor's report are to be treated as undisputed.

Two bonds of different dates are involved in the controversy, but the suit as amended appears to be predicated mainly, if not solely, upon the second bond, although the validity and effect of the first bond are matters for collateral consideration; and one of

the questions to be determined is whether the guardianship dated from the execution of the first bond or only from the making of the second bond.

The petition filed on March 24, 1925, made the following case: On February 3, 1919, W. D. Branch was, upon his petition filed in the court of ordinary of Berrien county, duly appointed guardian of the person and property of Robert Russell Branch and Felix W. Branch, minor children of the applicant and his deceased wife. Thereafter on the same date the applicant executed and delivered a bond as such guardian in the sum of $12,000, with Fidelity and Deposit Company of Maryland as surety thereon. This bond, as appears from a copy annexed as an exhibit to the petition, required that the principal should "well and truly perform and discharge the duties of guardian," and purported to have been signed by the principal and by Fidelity and Deposit Company of Maryland by J. D. Lovett, attorney in fact.

On February 2, 1920, the said W. D. Branch as principal and the said Fidelity and Deposit Company of Maryland as surety made and delivered a bond cumulative to the first bond, the second bond being in the sum of $15,000 and conditioned as follows: that the principal should "take good and lawful care of their [his wards'] person and property, according to the laws of this State, and shall annually make a just and true return of all his actings and doings herein unto the said ordinary and pay over all assets that may remain in his hands when said guardianship shall legally terminate." This second bond was signed by the principal and by Fidelity and Deposit Company of Maryland by Fair Dodd, agent, and by Aaron Haas, Son & Howell, general agents. The reason for the making of the second bond was that the principal and the surety and the said J. I. Norwood, ordinary, reached the conclusion that the first bond was improperly executed, they being in doubt as to the authority of J. D. Lovett to execute said bond on the part of the surety company, and, without any citation on the part of the ordinary, the principal and surety gave said second bond "in order to cure any possible defect existing in said first bond." The surety company "received the premium for said first bond, and if said agent did not have the authority to execute said first bond, said company ratified his act in receiving the premium from said William D. Branch, as guardian as

aforesaid. . . Petitioner shows that under the facts in this paragraph alleged said second bond was cumulative to said first bond and said Branch and said surety company thereby become liable by virtue of said second bond for past as well as future handling of said wards' property by virtue of said bond." Branch as guardian as aforesaid "came into possession of the following amounts and sums, to wit: April 1, 1919, $6000; December 3, 1919, $3094.94; March 26, 1920, $600," the same belonging in equal parts to Felix W. Branch and Robert Russell Branch. Robert Russell Branch reached his majority in October, 1924. Thereafter he demanded of W. D. Branch as guardian aforesaid the amount due him by the said Branch as such guardian. The petition prayed for an accounting and for the recovery of the aggregate amount of $9994.94, together with interest.

The plaintiff by amendment made the following further allegations: Before bringing this suit W. D. Branch, the guardian, had spent for his own benefit "all of said sums received for said words," none having been spent for purposes authorized by law. Petitioner does not know when the funds were spent except that they were spent before suit and before demand. At the time of the demand and of the bringing of the suit Branch was insolvent.

The last amendment alleges: At the making and delivery of the second bond by Branch as guardian and Fidelity and Deposit Company of Maryland as surety, Branch as guardian "should have had the funds that had been paid to him belonging to said wards, and said wards do not know whether he actually had the cash at that time or not, but if he did not he was solvent and said amount could have been made by judgment and execution against the said guardian, W. D. Branch, he being worth, at that time, more than the amount that he had collected, and that if he had already at said time spent said money, it was the duty of the said guardian to have collected said money from the said W. D. Branch, and the failure so to do was a breach of said bond."

As above stated, the defendant demurred generally and specially to the petition as amended, and, while the court overruled all grounds of the demurrer, both general and special, and exceptions have been duly taken to this ruling, it is not necessary, in our view of the case, to set forth the grounds of the special demurrer.

The defendant in its answer denied the authority of J. D.

Lovett to execute the first bond, and also denied that it had received any premium on such bond or had in any way ratified the act of Lovett in purporting to make and deliver the same in its behalf. The answer further alleged, that, the first bond being void and of no effect, the second bond, the execution of which was admitted, could not be construed as cumulative of the first bond, and hence the defendant can be held liable only for such defaults on the part of the principal as occurred subsequently to February 2, 1920, the date of the second bond. The defendant denied that any delinquencies or defaults had been committed by the principal since the execution of the second bond, and hence contended that no breach of this bond had been committed either by Branch as principal or the defendant as surety. The court, in ruling upon the plaintiff's demurrer to the defendant's answer struck that part of the answer in which it was alleged that the defendant could only be held liable for defaults occurring subsequently to the execution of the second bond. The answer also contained general denials sufficient to put the plaintiff upon proof, and set up by amendment other facts which are now immaterial.

From the auditor's report and the further proceedings relative thereto the following facts are to be taken as true: W. D. Branch was the natural guardian of the minors above named, and, as such, was entitled to demand and receive any property belonging to them, upon his taking oath and giving bond as required by law. On February 3, 1919, he appeared before the ordinary and took the oath and filed what is described and set forth in the petition as the first bond. J. D. Lovett, who signed this bond in behalf of the bonding company, had no authority to act for the company in such matter, and the company had no actual knowledge of his having done so. The company did not receive any part of the premium paid for the first bond and did not otherwise ratify the act of Lovett in signing it. The second bond was duly executed by the company on February 2, 1920, and on that date, Branch, the guardian, was solvent. The minors inherited from the estate of their grandfather S. B. Dorminey certain funds which the administrator of that estate paid over to their father, W. D. Branch, as follows: March 5, 1919, $1,853.91; April 1, 1919, $4,146.09; December 5, 1919, $94.94; December 5, 1919, $3,000; and on March 26, 1920, $600, making a total of $9,694.94. It is to be

noted from these dates that each item except the last was paid over and received after the making of the first bond on February 3, 1919, but before the execution of the second bond on February 2, 1920. The first item was not actually received, but the facts connected therewith as found by the auditor were as follows: "W. D. Branch bought in certain lands from the estate that his two wards were interested in. He agreed to pay $1,420 for this land, and instead of paying the actual money he gave to the estate his receipt for the $1,420 as guardian for his children, and the $433.91 was paid as follows: The said estate held against W. D. Branch an individual note payable by him alone to the amount of $433.91; this note was surrendered [to] W. D. Branch and he gave his receipt for the $433.91 as received by him as guardian." In each of the transactions representing the payment and receipt of money as hereinbefore referred to Branch intended to act and be dealt with in the capacity of guardian, and the other party, the administrator of the Dorminey estate, acted and dealt with him accordingly. Before the giving of the second bond on February 2, 1920, Branch had appropriated to his own use the whole amount of money and assets that had come into his hands up to that time as above indicated, total $9,094.94, with the exception of certain small items duly accounted for. The defendant's liability for the $600 received by Branch as guardian after February 2, 1920, is not disputed.

As appears in the brief of evidence made and filed by the auditor, letters of guardianship were issued by the ordinary to Branch on February 3, 1919, the date of the first bond, just as though the bond had met all the legal requirements.

■ The petition was not subject to demurrer upon the ground that the right to sue was not in the ordinary. Each of the bonds was payable to him in his official capacity as such, and it was his right in like capacity to bring suit upon any cause of action arising under either instrument. Civil Code (1910), § 5516; *Bailey v. McAlpin,* 122 *Ga.* 616 (50 S. E. 388). This is not to hold that such a suit might not be instituted by a ward in his own name after arriving at his majority. In that case the suit could be brought either in the name of the ordinary as obligee or in the name of the ward. Civil Code (1910), § 13; *Wynn v. Maddox,* 33 *Ga. App.* 87 (125 S. E. 516); *Harrell v. Emanuel,* 27 *Ga. App.*

546 (109 S. E. 294); *Boyd* v. *Crews*, 32 *Ga. App.* 138 (2) (122
S. E. 802); *Sheppard* v. *Clark*, 35 *Ga. App.* 503 (134 S. E. 125).
The petition, fairly construed, especially in view of the last amend-
ment, includes a complaint upon the second bond, and, under prin-
ciples to be stated in the third division of this opinion, was suf-
ficient to set forth a cause of action thereon; and the same would
be true even though it had affirmatively appeared from the peti-
tion (as it did later from the evidence) that the defendant was
not bound upon the first bond. However, since it is averred in
the complaint that the defendant, if not originally bound by the
act of Lovett in executing the first bond in its behalf, nevertheless
fully ratified the same, the defendant, if the allegations were true,
was bound upon each bond, and on that hypothesis the second bond
appeared to be cumulative. In such a case the surety on the sec-
ond bond would be liable for past as well as future defaults. Civil
Code (1910), §§ 3049, 3050; *Remington* v. *Hopson*, 137 *Ga.* 95
(72 S. E. 918). Whether the petition be construed as declaring
upon either bond to the exclusion of the other, or upon both bonds
together, a cause of action was set forth, and the general demur-
rer was properly overruled.

In our view of the case we have deemed it unnecessary to set
forth the several grounds of the special demurrer to the petition.
These have been carefully examined, however, and while as an
original proposition we are inclined to think that some of them
should have been sustained, yet, upon a consideration of the en-
tire record, we are satisfied that the defendant was not harmed by
the court's judgment thereon. All facts material to the defend-
ant's defense were fully developed, and it is clearly apparent that
the defendant was not misled nor put to any disadvantage by such
ruling.

"Where it afterwards appears from the evidence adduced upon
the trial that the ruling made by the court upon a demurrer was
harmless to the party objecting thereto, the judgment of the court
on the demurrer will be affirmed." *Bell* v. *Tucker*, 37 *Ga. App.*
254 (3) (139 S. E. 573); *Riverside Academy* v. *Urigh*, 33 *Ga.
App.* 455 (126 S. E. 900); *Tennessee Chemical Co.* v. *George*, 34
*Ga. App.* 824 (3) (131 S. E. 918); *Minter* v. *Malsby Machinery
Co.*, 17 *Ga. App.* 443 (87 S. E. 607).

The same is also true of the judgment sustaining the plaintiff's

demurrer to a part of the defendant's answer. In that ruling the court struck the defendant's allegations to the effect that it could only be held liable for defaults on the part of its principal occurring subsequently to February 2, 1920, the date of the second bond, and could not be held liable for any defaults prior to that date. While, as we shall explain below, we agree with the contention as thus set forth in the answer, it appears that this theory of defense was ultimately sustained by the trial court, and that the defendant was held liable only for breaches occurring subsequently to the execution of the second bond. Thus, the judgment will not be reversed because the court may have erred in sustaining a part of the plaintiff's demurrer to the defendant's answer.

■ It appearing without dispute that the name of the defendant was signed to the first bond without its authority, and that it did not receive the premium thereon nor otherwise ratify the execution of the same by Mr. Lovett, the defendant was not liable on that bond. The question then arises whether the appointment of Branch as guardian on February 3, 1919, should be considered as void and of no effect, or merely irregular, because such bond, given in pursuance of such appointment and on the same date, was without security. In other words, did the guardianship begin on this date or was its beginning postponed until the execution and approval of the second bond on February 2, 1920. The answer to this question is important in determining one or more other questions which are presented for decision. As will be seen presently, it is our opinion that the defendant surety was properly held liable as to the amount of principal awarded against it in the judgment. The date from which interest should be calculated will depend upon the time of the commencement of the guardianship. Also, upon the hypothesis that the appointment of Branch as guardian was wholly ineffective or at least in abeyance until the giving of the second bond, the defendant contends that as a consequence assets and monies which may have come into his possession from the administrator of the Dorminey estate prior to that time could not have been treated as property of his wards, but that the payment of the same to him was a mere waste or dissipation of the Dorminey estate by the administrator thereof. Assuming that if such premise be true, the legal conclusion stated would necessarily follow, we think that for the purposes of this case the

guardianship should be held to have begun on the first of the two dates mentioned.

On the question of whether the appointment of a guardian should be held a nullity under similar circumstances there appears to be a diversity of opinion among the various courts, although no case involving facts identical with those of the present case has been brought to our attention. See, in this connection, *Perkins* v. *Dyer,* 6 *Ga.* 401; *Echols* v. *Barrett,* 6 *Ga.* 443; *Howard* v. *Worrill,* 42 *Ga.* 397; *Southwestern R. Co.* v. *Chapman,* 46 *Ga.* 538; *Cuyler* v. *Wayne,* 64 *Ga.* 79 (3); *McCrary* v. *Clements,* 95 *Ga.* 778 (22 S. E. 675); Hatch *v.* Ferguson, 68 Fed. 43 (33 L. R. A. 759, and note).

Speaking of the "first bond," we can not say that it was no bond at all. Certainly Branch himself was liable thereon, and the paper was a bond even though without security. 9 C. J. 10. It is true that the statute was not satisfied merely by the giving of a bond, but required "bond and surety." Civil Code (1910), § 3032. Yet the appointment itself was regular and Branch took oath and gave bond; also, letters of guardianship were issued to him. The defect was merely in his failure to give security. So the case before us is not one in which the guardian has failed to give bond and also to give security, but is a case in which he gave bond though failing to give security. Furthermore, the name of the defendant was signed to the bond as surety by one purporting to act as its agent, and the unauthorized act of such agent could have been ratified. The appointment is not to be declared void merely for the want of some act on the part of the defendant ratifying the attempted execution of the bond in its behalf, when at all times subsequently the same could have been ratified in numerous ways.

We therefore hold that the appointment of Branch as guardian, while irregular and defective, was not fatally defective or void, and that his guardianship dated from February 3, 1919. Funds which he received and receipted for as shown in the statement of facts were impressed with the character of trust funds and were to be dealt with by him and to be considered in law as the property of his minor children of whom he was guardian; especially so at the election of the ordinary, to whom the guardian was accountable. Also, such should be the time of the commencement of the

guardianship for the purpose of determining the date from which interest is to be charged. Whether, if suit had been brought, not upon any bond of such guardian, but against the administrator of the Dorminey estate, by one properly representing the minors, such administrator could have been held liable, under the facts appearing, for paying over to Branch the funds belonging to such minors is a question with which we are not at present concerned.

■ It is perhaps fair to state that while Mr. Lovett had no authority to execute a guardian's bond in behalf of the defendant surety company, he was the agent of the company to write various classes of bonds and appears to have acted in good faith in undertaking to execute the bond as he did in this case, although his authority was in writing and the effect of the same could very easily have been ascertained by him.

Since the defendant was never a party to the first bond, its liability, if existing, arose only upon the second bond; and, this bond not being cumulative, the doctrine of cumulative suretyship is inapplicable; and since there is no express or implied stipulation as to past waste or misconduct on the part of the guardian (Civil Code of 1910, §§ 3049, 3052), the defendant's obligation as surety can be held applicable only as to a devastavit or breach of duty committed by the guardian after the execution of the second bond. *Lamar* v. *Walton,* 99 *Ga.* 356 (3) (27 S. E. 715); *Huson* v. *Green,* 88 *Ga.* 722 (16 S. E. 255); *Justices of the Inferior Court* v. *Woods,* 1 *Ga.* 84; *Bryant* v. *Beall,* 1 *Ga.* 355. But Branch, at the time of the execution of this bond, being personally liable to the estate of his wards for money and assets belonging to the estate, which he had previously converted to his own use, and being solvent at that time, committed a breach of the bond by failing to collect from himself the amount of his indebtedness thus existing.

In 28 C. J. 1290, it is said: "The sureties in a guardian's bond are liable for a debt which the guardian owed the ward at the time of his appointment, provided that the guardian was then solvent." This statement appears to be well supported by the cases cited, all of which we have carefully examined: Pfeiffer *v.* Knapp, 17 Fla. 144; Johnson *v.* Hicks, 97 Ky. 116 (30 S. W. 3, 16 Ky. L. R. 827); Black *v.* Kaiser, 91 Ky. 422 (4) (16 S. W. 89, 13 Ky. L. R. 11); Mattoon *v.* Cowing, 13 Gray (Mass.), 387; Sargent *v.* Wallis,

67 Tex. 483 (3 S. W. 721) ; O'Neall v. Herbert, 1 McMull. (S. C. Eq.) 495; Clement v. Hughes, 13 Ky. L. R. 352 (16 S. W. 358, 17 S. W. 285).

In Ætna Indemnity. Co. v. State, for use of Gallaspy, 101 Miss. 703 (57 So. 980, 39 L. R. A. (N. S.) 961), the Supreme Court of Mississippi held as follows: "Sureties on the bond of a guardian, executed after he has converted property of his ward to his own use, are liable for the defalcation if, after the bond is executed, he continues solvent, so that he could have restored the funds to the trust, which he failed to do." In that case the facts were that Gallaspy was appointed guardian of his three minor children, June 27, 1899. At that time there was very little property to be taken into his custody, and the court required a bond of only $500 to be executed for each child. The sureties were the same upon each of these bonds. Subsequently the guardian received for each of his wards a much larger sum and after the lapse of an additional period of some eighteen months the court, on the application of the sureties on the first bonds, made an order that these sureties be relieved from further liability and that a new bond be executed, which was accordingly done on May 13, 1907. This new bond was in the sum of $6000 and was given for the protection of all three of the children. In a suit upon the latter bond it appeared that the whole amount of money which the guardian had received under the first bond had been deposited in a bank to his individual credit, and was checked out to pay his personal debts, and that this was done before the execution of the second bond. As was said by the court: "In other words, Gallaspy took this whole sum and treated it as his own, and converted it to his own use, and disposed of it prior to the giving of the second bond, and that he had not only done this, but that he had overdrawn some $4000. While the record unquestionably shows that while acting under the first bonds he had converted to his own use the money belonging to his wards, it also appears that on May 13, 1907, when this bond was executed, Gallaspy was still solvent and worth several thousand dollars more than was due his wards." Continuing, the court in its opinion said: "When this second bond was given, although the actual conversion of these wards' property had taken place under the first bond, the guardian was solvent and fully able to pay the amount then due the wards. The amount was lost to them

because the guardian failed and neglected to pay over the amount to them as he should have done, and it was because of this neglect that they lost their money. It is true that in this case it was a debt owing by the guardian to the wards, and not the debt of a third party. It is also true that the neglect of the guardian was the failure to pay over for the wards, while he was solvent, and from himself, a sum of money which he had converted, and which belonged to them. But this fact can not affect the legal principle. The duty imposed by law for him to protect his wards from loss by neglect to exercise reasonable diligence to collect debts owing to them rested more heavily upon him when he was their debtor by his own wrongful act than it would if he had merely failed to collect a debt from some third party. Under these circumstances the law would hold his bondsmen liable under a state of facts that might exculpate them under other circumstances. A rule of law that would exculpate a guardian for failing to collect from himself when he had wrongfully converted the funds of his ward, merely because the debt was owing by him, and he as an individual would have to make the payment to himself as guardian, would be a perversion of the right, and we apprehend that no court will ever so hold. Of course, it must appear in every case that the guardian was solvent and could have been made responsible during the currency of the second bond. In short, it must be shown that the wards have actually suffered loss by reason of the neglect. If it were shown that the guardian was insolvent, and that at no time during the life of the second bond could the amount have been collected, the second bond would not be liable for the neglect, because no damage was done by it." A number of decisions are cited, and it is observed that "The law announced by the above cases is the universal law, so far as we have been able to ascertain it."

The effect of the decision in the Gallaspy case was not to hold the defendant liable on the second bond for prior or past defaults; but the theory of that and like cases is that the guardian, being solvent and having failed to collect from himself amounts for which he is personally liable to the minor's estate, commits a breach of such bond for which he and his surety are answerable, without any sort of retrospective construction of the obligations thereof. See, in this connection, Cowden v. Trustees, 235 Ill. 604 (885 N. E. 924, 23 L. R. A. (N. S.) 131) ; Bassett v. Fidelity & Deposit Co.,

184 Mass. 210 (68 N. E. 205, 100 Am. St. R. 552) ; State ex rel. McClamrock *v.* Gregory, 119 Ind. 503 (2) (22 N. E. 1) ; U. S. Fidelity & Guaranty Co. *v.* Smith, 40 Ind. App. 136 (81 N. E. 226 (3)) ; Coleman *v.* Smith, 14 S. C. 511, 514; Owens *v.* Mc-Mahon, 122 Wash. 191 (210 Pac. 200).

The principle was not involved either in Lamar *v* Walton, supra, or in Huson *v.* Green, supra, and no case has been cited to us, and we have found none, in which its soundness has been brought directly into question. Although the rule laid down in the Gallaspy case seems never to have been invoked in this State, we are of the opinion that it is not in conflict with any of our statutes or decisions, but that it is consistent therewith.

Counsel for the defendant cite and rely upon the case of Farrar *v.* United States, 30 U. S. 373 (8 L. ed. 159). In that case the alleged principal for whose defaults it was sought to hold the sureties liable was commissioned as surveyor on June 13 and bonded on August 17, 1823. The sum of money found by the jury for the government had been paid to him before either the date of his commission or the date of his bond. In the bill of exceptions it was complained that the court erred in rejecting evidence offered by the sureties to the effect that their principal had appropriated the money to his own use before the date of the bond. The Supreme Court, in discussing the case, said: "We feel no difficulty in affirming that for any sums paid to Rector [the principal] prior to the execution of the bond there is but one ground on which the sureties could be held answerable to the United States, and that is on the assumption that he still held the money in bank or otherwise. If still in his hands, he was, up to that time, bailee to the government; but upon the contrary hypothesis, he had become a debtor or defaulter to the government, and his offense was already consummated. If intended to cover past dereliction, the bond should have been made retrospective in its language. The sureties have not undertaken against his past misconduct. They ought, therefore, to have been let into proof of the actual state of facts so vitally important to their defense; and whether paid away in violation or in execution of the trust reposed in him, if paid away, he no longer stood in the relation of bailee. . . In giving instructions to the jury on these points, therefore, the court erred, as well as in refusing to let the defendants into

proof, as prayed; since such testimony presents a direct negative to the breach alleged, which is that the obligor then had the money in his hands."

We do not know what finally became of that case, but we assume that if the pleadings had so warranted, the plaintiff, on proof of the above facts by the defendant, would have been permitted to show in rebuttal that Rector was solvent on and after the execution of the bond sued on, and that his failure to collect the money from himself under that bond constituted a breach for which he and his sureties would be liable thereon. The government made no effort in that case to sustain its claim of liability against the sureties upon any such theory as the plaintiff has advanced in the present case; so that the ruling there made is not authority against the contention of the plaintiff in the case at bar.

In view of the fact that Rector was a public officer and, as such, was to receive and discharge specific funds, while here the principal of the bond was a guardian and, as such, was to have charge and control of an estate, it may be that the bonds were so different in character and effect that other distinctions than the one noted should exist between the Farrar case and this case.

If the guardian was solvent on February 2, 1920, when he made the second bond, that would mean that he had sufficient property and assets to pay his debts, including the personal debt to the estate of his wards. *Griffin* v. *State,* 142 *Ga.* 636 (4), 643 (83 S. E. 540, L. R. A. 1915C. 716, Ann. 1916C, 80). And we agree with the learned judge of the trial court that his failure to do so was a breach of the bond. This conclusion may appear to be a hard one, but it is not without equitable justification in favor of the beneficiaries of the bond. While the guardian was yet solvent and could have been required personally to account to his wards, the defendant came in and gave a bond which, so far as appears, was deemed by everybody to be good and sufficient. If this bond had not been given, the guardian would probably have been required to straighten out his affairs and make good his misappropriations while he was yet personally able to do so. Those interested in the bond were thus lulled into a sense of security and were kept in such condition until it was perhaps too late for them to look elsewhere for their protection. It seems that the doctrine of estoppel should have some application. While it has been found that the

defendant had no actual knowledge of the first bond, an appreciation of the facts is not essential to the application of the principle of estoppel.

In reaching our conclusion stated above, we have assumed that the auditor, in finding that the defendant had no actual knowledge of the attempted execution of the first bond at the time it signed the second bond, intended to exclude *all* actual knowledge, even imputed knowledge such as might have been charged to the defendant from the knowledge of its agent Lovett, under some circumstances. *German American Mutual Life Asso.* v. *Farley,* 102 *Ga.* 720 (2) (29 S. E. 615) ; *Springfield Fire &c. Ins. Co.* v. *Price,* 132 *Ga.* 68 (64 S. E. 1074). Thus, we have not considered the extent of the facts with which Lovett appears to have been familiar, nor whether such knowledge as he may have had should have been imputed to the defendant.

Again, the auditor appears to have concluded, on the law side of the case, that irrespective of any question of actual knowledge, the defendant was charged, as a matter of law, with knowledge of the existence of all proceedings before the ordinary, including the first bond. This was to charge constructive knowledge where there was no actual knowledge; and, while such conclusion by the auditor was reversed by the trial judge upon exceptions by the defendant, this is another question which we have found it unnecessary to decide in the present case, and we have stated the question solely for the purpose of exclusion and not for decision.

■ The amount $1,853.91 mentioned in the above statement includes two transactions : (1) Branch as guardian bought lands in his own name from the estate in which his wards were interested, bidding the same in at $1,420. Instead of paying this amount in cash, he gave to the administrator his receipt as guardian. (2) The same estate held a note against Branch in his individual capacity for $433.91. This note was surrendered to him for his receipt as guardian for a like amount.

It is contended by counsel for the defendant that in no event could the defendant be held liable on these transactions. In the brief it is said that "Neither of these items ever constituted any actual payment to Branch in any capacity other than as an individual, as they were amounts owing by him personally to the Dorminey estate. He gave his receipt as guardian therefor, and

the Dorminey estate diminished the amount owing to the wards correspondingly." We can not agree with this contention. Branch used the credit of his wards to his personal benefit in the amount named. He gave his receipt as for funds paid over to him, and thus obtained the land and his personal note of the aggregate value of $1,853.91. Under the facts of this case, the guardian, having issued his receipts as such for his personal obligation and having obtained a deed to land and the surrender of his note, may be treated as the debtor of his wards' estate for the amount of such receipts; and if in these matters he became personally liable to the estate of his wards, as we think he did, it was his duty as guardian to collect such indebtedness, provided it was still owing at the making of the second bond and provided he was then solvent and able to pay the same.

Under the principles enunciated in the preceding division, there was no error in holding the surety liable as for a breach of the second bond in his failure to perform such duty. This conclusion, we think, is supported by the following additional cases: Clements v. Ramsey, 9 Ky. L. R. 172 (4 S. W. 311); State v. Hull, 53 Miss. 626; Avent v. Womack, 72 N. C. 397 (367); Sanders v. Forgasson, 3 Baxt. (Tenn.) 249. These cases are collected in a note in 28 C. J. 1290, and sustain the statement to which they are cited. See also to the same effect: Martin v. Davis, 80 Wis. 376 (50 N. W. 171); Pfeiffer v. Knapp, 17 Fla. 144 (2); McGill v. O'Connell, 33 N. J. Eq. 256; U. S. Fidelity & Deposit Co. v. Smith, supra.

■ Judge Crum in rendering judgment for the plaintiff expressed in the record his opinion that even if Branch was insolvent and thus "could not, by a disposition of all his property, pay his debts, including the amounts he had received rightfully belonging to his wards," then, as to all items received by him prior to the execution of the second bond, he should on his final qualification have proceeded against the administrator of the S. B. Dorminey estate, such administrator being shown by the evidence to have been then and at all times solvent, and that the failure of Branch to do so constituted a breach of his second bond as guardian. In the bill of exceptions this expression is termed a ruling or holding, and is assigned as error upon the following grounds: (1) contrary to law; (2) no such breach was declared on in the petition; (3) the court, having found that the administrator of the Dorminey estate is sol-

vent, a recovery can still be had against him, and therefore no damage is shown.

In view of what we have said above, we are of the opinion that the judgment rendered against the defendant was demanded by the facts as they appear without dispute in the record, upon the theory discussed in the third division above, that being the case as laid in the petition; and, if in this we are correct, it is immaterial that the judge may have expressed an erroneous opinion as to some other theory of liability. *Smith* v. *Page,* 72 *Ga.* 539 (2 a) ; *Brunswick & Birmingham R. Co.* v. *Hoodenpyle,* 129 *Ga.* 174 (6) (58 S. E. 705).

■ The bill of exceptions of the defendant contains no assignment of error upon the overruling of any of its exceptions to the auditor's findings of fact. It is therefore immaterial to this court that as to these exceptions the court below refused the plaintiff's motion to strike the same. However, this was not an equity case, but a law case, and the exceptions both of fact and of law were not subject to dismissal upon the grounds taken in the plaintiff's motion. *Johnson* v. *City of Cairo,* 27 *Ga. App.* 125 (2) 107 S. E. 551).

■ One of the auditor's conclusions of law was that the guardianship dated from February 3, 1919, and that interest should be charged against the guardian from February 3, 1920, as to all amounts received by him in the meantime, one year being allowed by law for the collection of assets and to ascertain the indebtedness of the estate, during which no interest should be charged. See Civil Code (1910), §§ 4077, 4078; *Griffin* v. *Collins,* 125 *Ga.* 159 (5) (53 S. E. 1004). The judge of the superior court, upon a review of the case upon exceptions by the defendant to the auditor's report, differed with the auditor as to the time of the commencement of the guardianship, holding that the appointment was absolutely of no effect until the making of the second bond on February 2, 1920. Consistently with this conclusion he held that interest should be calculated only from February 2, 1921, and rendered judgment accordingly. From what we have said in the second division it follows that the judgment sustaining the exception to the auditor's report as to the matter of interest must be reversed.

Although the bill of exceptions brought by the plaintiff, the ordinary, is on its face denominated a cross-bill, since it was

tendered within thirty days from the final judgment and contained a proper assignment of error thereon, it can be, and is, treated as a main bill.  *Latimer* v. *Bennett, 37 Ga. App. 246, 253* (139 S. E. 570) ; *Everett* v. *Shy, 30 Ga. App. 383* (2) (118 S. E. 577) ; *Ruffner* v. *Dunlop, 32 Ga. App. 693* (4) (124 S. E. 544).

*Judgment affirmed in No. 18372, and reversed in No. 18373.*
*Jenkins, P. J., and Stephens, J., concur.*