### MERKLE v. WALDREP, Gdn., et al.

No. 27002. Jan. 25, 1938.

Rehearing Denied June 14, 1938.

Application for Leave to File Second Petition for Rehearing Denied April 18, 1939.

Thurman & Thurman and Goode, Dierker & Goode, for plaintiff in error.

Waldrep & Skinner, for defendants in error.

RILEY, J. This is an appeal from a judgment rendered in the district court on appeal from the county court of Pottawatomie county, in a proceeding brought for the cancellation of an order approving and settling the account of John H. Merkle, plaintiff in error, as guardian of the estates of four minor children and surcharging the account of such guardian.

In 1927, Bert Harris, a banker of Maud, Okla., was by the county court of Pottawatomie county appointed guardian of the estates of Una, Dora, Irene, and Alva Hembree, minors. At that time the property, a small farm, which said minors had inherited, was of but little value. In the latter part of 1927, or early in 1928, oil was discovered under and produced from said land, so that the same became very valuable. In the spring of 1929, there had accumulated a large sum of money in the hands of said guardian. Some $30,000 thereof had been invested in a farm in Cleveland county. In early August, 1929, Harris had in his hands money and property belonging to said minors amounting to about $300,000. About $150,000 of this was in cash. In January, 1929, Leroy G. Cooper became county judge of Pottawatomie county. Shortly thereafter he called upon Harris for a report as guardian. Therefrom it was disclosed that Harris had more than $150,000 belonging to said estate deposited in the bank at Maud in which Harris was interested. Shortly thereafter the county judge suggested to Harris that more of the money in said estate should be invested. About that time one Earl Clay approached Harris and suggested that his, Clay's, brother, who lived near Neosho, Mo., would like to sell the guardian some real estate located in Newton county, Mo. The brother, Charles or C. L. Clay, was operating said land as a dairy farm, known as the White City Dairy Farm. It was in fact owned by a corporation known as the White City Dairy Company. All the stock of said corporation was owned by Charles, or C. L., Clay, his wife, and his wife's father. It consisted of about 446 acres of upland with considerable improvement and was fairly well equipped as a dairy farm.

The Clays, Earl and Charles, had been operating a trucking business in the oil fields about Drumright, Sapulpa, Seminole, and other oil fields, and became rather heavily indebted particularly to the Drumright State Bank.

Sometime about the early part of August, 1929, and after Earl Clay had approached Harris with the proposition to purchase said land in Missouri, the county judge called Harris over the telephone and informed him that Earl Clay was then in his, the county judge's, office, and that Clay and the county judge were ready to go with Harris to Newton county, Mo., for the purpose of looking over the land which the Clays desired to sell to the guardian. It appears that Harris in the meantime had talked the matter over with the adult brothers and sister of the minor children, and that they had objected to the purchase of the Missouri land by the guardian. Harris told the county judge that he could not get away that day to go view the land, and also that he did not desire to purchase the land, principally because of the objection of the adult brothers and sister of the minors.

Shortly thereafter, on August 19. 1929, the county judge, without citation, without request from any of the interested parties, without notice or hearing, entered an order removing Bert Harris as guardian of said minors.

On August 27, the county judge entered an order appointing John H. Merkle, plaintiff in error herein, as guardian of the estates of said minors. Shortly thereafter, on Sunday, August 31, 1929, the county judge, Earl Clay, and Merkle together drove from Tecumseh to the Clay farm near Neosho, Mo. Merkle testified that on the way from Tecumseh, Okla., to Neosho, Mo., he first learned of the proposal to purchase the land by him as guardian for said children.

The next day a preliminary oral agreement was made for the purchase of the Missouri land by Merkle as guardian for an agreed price of $55,750. Arrangements were made for an abstract of title and an attorney was employed to examine and pass upon the title when the abstract had been prepared. There was some delay in preparing the abstract and there was some controversy as to whether certain liens existed against the land. About October 15th these matters were closed up. It appears that liens and claims against the land amounted to about $47,000. On October 18, 1929, the deal was closed to the extent that Merkle gave his check to the White City Dairy Company, aggregating about $47,000, which was in turn paid over to the various lien claimants, and a deed for the property was delivered to Merkle. The balance of the purchase price, amounting to about $8,464, was not paid at that time. A controversy arose between Merkle and the White City Dairy Company concerning the balance. Merkle apparently claimed that the White City Dairy Company, or Charles Clay, had agreed in the transaction to lease the land from Merkle for five years at an annual rental of about $3,900, or 7 per cent. of the purchase price. This resulted in a suit to recover the balance of the purchase price. The suit found its way into the federal court in Missouri, where judgment was obtained against Merkle for said sum, which he paid, and then obtained possession of the land. That case ended about July 1, 1930.

November 10, 1930, Merkle filed his resignation as such guardian, and the State National Bank of Shawnee, Okla., was appointed as guardian for said minors.

Merkle filed his final account and thereafter filed a supplemental final account. Hearing thereon was set in December, 1930, and continued until January 2, 1931, at which time a hearing was had. At said hearing an attorney for the State National Bank, the then guardian, appeared and stated in the record that from investigation made up to that time there was or would be a probable loss of $40,000 to the estate of said minors growing out of the Missouri land transaction.

It was also suggested that the final account be approved with a provision therein that it was not intended to discharge the guardian and his bondsmen against any latent fraud that might develop, and that at that time no direct evidence of fraud in connection with the transaction had been found.

Mr. Cooper, the then county judge, was about to retire from said office. His term would expire on the second Monday in January of that year. He suggested that the final discharge in nearly all cases was made to read "that the guardian is discharged from any future liability * * * but not from anything that has transpired in the past." At the close of the hearing the court announced that the final and supplemental final account of Merkle as guardian would be approved and that he and his bondsmen would be released and discharged from further liability. No formal order was filed until April 23, 1931, at which time a journal entry was filed with the court clerk signed by LeRoy G. Cooper, judge, dated as of January 2, 1931, wherein was recited:

"* * * And it appearing that said John H. Merkle has accounted for every part of property of said minors, and each of them, received by him, and that his statements of account are supported by appropriate vouchers in each instance, in the form of canceled checks covering expenditures, together with the authority therefor and the statement of the depositary banks as to the money received as such guardian, and that no profit has been made by him through any increase in said estate, or in the handling thereof, and there being no objections and the court being fully advised,

"It is ordered, adjudged and decreed by the court that the accounts of the said John H. Merkle, as such guardian, be and the same are hereby finally settled, allowed and adjusted by the court, according to the terms and tenor of said final account of the said John H. Merkle filed herein and the said John H. Merkle, and his sureties are hereby released from any liability to be hereinafter incurred.

"Done in open court this 2nd day of January, 1931."

The State National Bank continued to act as guardian until September 20, 1933, at which time it filed its resignation as such guardian. During said time no further question was raised as to the final account of Merkle.

Thereafter Walker Hembree was appointed as guardian of Irene and Alva Hembree, and Tom C. Waldrep was appointed guardian for Una and Dora Hembree. September 25, 1934 this proceeding was commenced in the county court by petition to vacate the order approving the final account of Merkle. Hearing was had in the county court, resulting in an order denying the petition. Appeal was perfected to the district court, where trial de novo was had, resulting in a judgment canceling and setting aside said account and surcharging same in the sum of $55,750, with interest, and also surcharging the account with all fees and allowances made

to the guardian, the amount of which was not determined.

From this judgment Merkle prosecutes this appeal.

The first proposition presented is that because the final account of the guardian had been approved and the guardian discharged by the county court more than three years before this proceeding was commenced, and no appeal was taken from that order, the county court was without jurisdiction to entertain the petition to vacate and that the district court was likewise without jurisdiction in an appeal from the county court.

The jurisdiction of the county court in such matters is fully discussed and upheld in Re Appeal of Higginbottom (Barber, Gdn., v. Haddock et al.) 176 Okla. 188, 55 P. (2d) 122, and cases therein cited. Therein it is held:

"Under section 1348, O. S. 1931, as made applicable to guardians by section 1474, O. S. 1931, the county court in which a guardianship is pending has jurisdiction and authority, in a proper case, to reopen and examine the accounts of a former guardian at any time prior to the final termination of the guardianship proceedings."

That is a case wherein a former guardian had filed his final account, notice of hearing given, a hearing had, and the final account approved, the guardian and his bondsmen discharged and a new guardian appointed exactly as in the instant case. The only difference is that in the instant case the new guardian had been appointed and was represented by counsel at the hearing on the final account of Merkle, the former guardian. The opinion is supported by many prior decisions of this court.

Plaintiff in error bases his contention in this regard largely upon the proposition that after a guardian has been discharged the district court has jurisdiction in equity to set aside the report and that the matter is therefore one of equitable cognizance. But most, if not all the cases cited are cases where the ward had attained his majority. But In re Higginbottom, supra, points out that section 1348, quoted therein, authorizes or gives to the person under disability (the ward) two remedies; One by moving for cause to reopen the account, Second, by action against the guardian either individually or upon his bond. While it is true that said section applies to administrators and executors in the administration of estates, yet, as pointed out by section 1474, O. S. 1931, the provisions of the statute regulating accounting by administrators are made applicable to settlements by guardians.

It is next contended that the trial court erred in overruling the demurrer to the petition to vacate the order approving Merkle's final account as guardian.

On this question plaintiff in error first cites Adams v. Martin (Cal.) 44 P. (2d) 572. There is a difference between the law of California and that of Oklahoma with reference to the effect of an order approving a final account and discharging a guardian. In California the law is that such order, if no appeal be taken, becomes final at the expiration of the term. The law in Oklahoma is that, until the minor becomes of age all judgments and orders sleep in the bosom of the court and may be modified, vacated, or set aside during such time upon proper notice and for good cause shown. In re Hickory's Guardianship, 75 Okla. 79. 182 P. 233.

The rule, however, has some exceptions with which we are not here concerned. One exception is that the county court has no jurisdiction to set aside an order confirming a sale of the ward's land after deed is issued and title passed.

By section 1348, O. S. 1931, quoted in Re Higginbottom, supra, in any action brought under said section, the allowance and settlement of an account is made prima facie evidence of its correctness.

By section 1348, supra, persons interested in an estate in charge of an executor, administrator, or guardian are divided into two classes: First, those laboring under no legal disability; and, second, those laboring under some form of legal disability. As to the first class, the settlement and allowance of a final account by the county court on an appeal is conclusive. Such persons may attack such order only under the part of chapter 2, art. 21, O. S. 1931, governing proceedings to vacate or modify judgments in courts of record. To the second class, those laboring under any legal disability, the additional right is reserved to move for cause in the county court to reopen and examine the account, or to proceed by action in a court of competent jurisdiction against the executor, administrator, or guardian, either individually or upon the bond. Either may be done at any time before administration of the estate is finally closed.

In such actions the allowance and settlement of the account is to be considered only as prima facie evidence of its correctness.

In the Higginbottom Case, supra, the motion to reopen merely alleged that the final account sought to be reopened "does not reflect a proper accounting and settlement by said E. T. Haddock, the former guardian, of his doings as such guardian." In considering the sufficiency of such pleading this court said:

"Under ordinary circumstances we would not hesitate to hold such allegations insufficient. But this court and the probate courts of this state owe all persons under legal disability a full measure of protection, and such courts and this court should not permit the rights of such persons to be lightly concluded against them to satisfy some technical rule of pleading."

This is as it should be.

The courts uniformly hold that orders approving and settling final accounts of administrators, executors, etc., may be vacated or modified for the same causes and under the same conditions and procedure as other judgments or orders of courts of record may be vacated or modified. If persons laboring under legal disability are required to allege with the same particularity the cause for reopening as is required under the general provisions for vacating or modifying judgments by persons not under disability, then no valuable right is saved to persons under legal disability by the provisions of section 1348, supra.

We are convinced that only allegations of the existence of a state of facts sufficient, if true, to overcome the prima facie evidence of the correctness of the final account is required of persons laboring under legal disability. Prima facie evidence, as used in section 1348, supra, means evidence sufficient in law to raise a presumption of the correctness of the final account, or evidence sufficient to establish such correctness unless rebutted.

The Legislature evidently intended to reserve to persons under legal disability some additional right or some more simple remedy against unfaithful or dishonest executors, administrators, and guardians than was given by the general law to those under no legal disability. Otherwise, the enactment of section 1348, supra, was useless and futile.

Bearing in mind, then, the jealous care with which the law guards and protects all persons under legal disability, unable to protect their own rights, and the protection due such persons by the courts, and taking into consideration that absolute honesty and good faith which is required of a guardian in the management of his trust, and that it is his duty and he is bound to make full and honest disclosure to the court of all his transactions; that he must not conceal any material fact, nor untruthfully represent any matter to the court; that the court, standing in loco parentis, must act upon the statements and representations of the guardian—all fine distinctions between fraud and dishonesty practiced in the management of the estate and fraud practiced in the procurement of the order approving and settling the final account and the fine distinction between extrinsic and intrinsic fraud therein should be brushed aside, so that allegations of facts showing deception, dishonesty, or infidelity in dealing with the ward's estate which were carried forward into the making up of a false and fraudulent report, should be and are sufficient to confer jurisdiction upon the court to reopen and examine the final account without regard to nice distinctions between frauds used in the procurement of the order approving and settling the final account.

Taking, as we do, this view of the law as applicable to proceedings under section 1348, supra, allegations of the petition to reopen and re-examine the final account of Merkle as guardian are abundantly sufficient, although rather meagre and somewhat in the nature of conclusions in charging actual fraud, extrinsic or intrinsic, exercised in the procurement of the order approving and settling the final account. We are not unmindful of certain decisions of this court which appear to hold minors and incompetents to the strict rule of pleading required by persons not under disability in attacking judgments of courts of record. But those cases apparently do not take into consideration the provisions of section 1348, supra.

The only remaining question goes to the sufficiency of the evidence to sustain the judgment of the trial court. There is an abundance of evidence tending to support the allegations of the petition, particularly that part thereof alleging fraud and conspiracy in the purchase of the Missouri land. The evidence, like the petition, is somewhat meagre as to the question of fraud practiced in the procurement of the order approving and settling the final account. But, since we have held that all acts of fraud, deceit, infidelity, etc., in the management of the estate carried forward and going into the final account are pertinent and proper matters to be considered in a proceeding by a person under legal disability brought under the provisions of section 1348, supra, we consider such evidence material.

It is suggested that since this cause was tried insurance has been collected on account of destruction by fire of one of the buildings on the Missouri farm, and the amount collected has been paid over to the present guardian for the benefit of said minor children.

It is also suggested that one of the Hembree children has attained majority since this cause was tried and has sold and conveyed his interest in said Missouri land, and has thereby ratified the action of plaintiff in error in the purchase of said land, as to her interest therein.

These matters are not shown in the record and may not be considered other than to say that if such suggestions be true, plaintiff in error should as a matter of right be allowed to establish such facts, and if he does so, should be given credit against the surcharge of his account for the amount of insurance and should be allowed such relief against the claim of the ward who may have transferred her interest in said Missouri land as law and justice may allow.

The judgment of the trial court is modified so as to permit plaintiff in error on remand to make such showing as he may desire as to the new matters suggested, and, as so modified, is affirmed.

BAYLESS, V. C. J., and PHELPS, CORN, and HURST, JJ., concur. WELCH and GIBSON, JJ., dissent. OSBORN, C. J., not participating.

---

GIBSON, J. (dissenting). I am unable to agree, except to a limited extent, with the rule of law as expressed in the first paragraph of syllabus of the majority opinion. Neither can I concur in the conclusion on the merits of the cause.

It is true that the county court may, in a proper case, reopen and examine the account of a former guardian at any time prior to termination of the guardianship. But the powers of the court in such case are regulated by the general statutes governing courts of record in the matter of modifying and vacating their orders and judgments (secs. 556-564, O. S. 1931).

The majority opinion depends upon the Higginbottom Case, holding in effect that section 1348, O. S. 1931, relating to reopening for further examination final accounts in decedents' estates, is by section 1474, O. S. 1931, 58 Okla. St. Ann. sec. 833, made applicable to guardians' accounts. In my opinion the Higginbottom Case is unsound, is not supported by

authority, and is directly contrary to the decisions of the California courts and the courts of Montana and Idaho construing practically identical statutes. Re Guardianship of Cardwell, 55 Cal. 137; In re Di Carlo's Estate (Cal.) 44 P.2d 562; In re Kostohris' Estate (Mont.) 29 P.2d 829; Luke v. Kettenbach (Idaho) 181, 705. Since our Probate Code comes from California, the interpretation placed thereon by the courts of that state should be persuasive, if not binding, upon us. See Woods v. Vann, 125 Okla. 121, 256 P. 918, 920, and cases there cited.

In my estimation it is more or less immaterial whether we say that section 1348 shall apply in guardianship cases. If it may be said to apply, the rights therein guaranteed to wards are not enlarged beyond the rights already accorded them under the general statutes, supra, authorizing courts of record to modify or vacate their own judgments for the causes in said statutes enumerated. The sections under consideration read as follows:

Section 1348:

"The settlement of the account and the allowance thereof by the court, or upon appeal, is conclusive against all persons in any way interested in the estate, saving, however, to all persons laboring under any legal disability their right to move for cause to reopen and examine the account, or to proceed by action against the executor or administrator, either individually or upon his bond, at any time before final distribution; and in any action brought by any person, the allowance and settlement of such account is prima facie evidence of its correctness."

Section 1474:

"All the proceedings under petition of guardians for sales of property of their wards, giving notice and the hearing of such petitions, granting and refusing an order of sale, directing the sale to be made at public or private sale, reselling the same property, return of sale and application for confirmation thereof, notice and hearing of such application, making orders, rejecting or confirming sales and reports of sales, ordering and making conveyances of property sold, accounting and the settlement of accounts must be had and made as provided and required by the provisions of law concerning the estates of decedents unless otherwise specially provided herein."

In my opinion, section 1474 clearly refers only to procedural matters and not to remedies, or to grounds upon which relief of any character may be sought. But if that section does make the provisions of section 1348

applicable to guardianship cases, the ward still must "move for cause" to reopen the account, and the effect, therefore, is simply to recognize in the order rendered on accounting that degree of finality usually accorded the judgments of courts of record, and the exceptions thereto as fixed by statute in the matter of modification or vacation of such judgments by the courts rendering same.

An order settling the account of a guardian is appealable to the district court, Section 1397, O. S. 1931. The appeal must be taken in the time authorized by section 1400, O. S. 1931, and there is no extension of that time by reason of the disability of the minor. Campbell v. Hickory, 137 Okla. 235, 278 P. 1088. Therefore, when an order on final accounting is unappealed from in the time fixed by law, the remedy of the ward to impeach the order is to show cause against the same in the manner provided by law. Section 1348 does not purport to set out or define the grounds upon which one under disability may seek modification or vacation of such order. Those grounds are found in sections 556 and 563, O. S. 1931, as aforesaid, and the time in which an infant may move to vacate is set out in subdivision 8 of said section 556, and in 563 also. These sections apply to all courts of record (section 564, O. S. 1931) ; and the county court is a court of record, and its judgments in probate are absolute, unless appealed from. Woods v. Vann, supra. On at least one occasion (Dunleavy v. Mayfield, 56 Okla. 470, 155 P. 1145) this court has held that: "Generally an order of a county court approving the final report of a guardian is conclusive on both the guardian and the ward, and impervious to collateral attack as to all matters properly included in such report." Section 547, O. S. 1931, authorizing appeal by an infant within six months after attaining majority, does not apply to probate appeals from county court. Campbell v. Hickory, supra. When a judgment in probate is so allowed to become final it is binding and conclusive upon minors and adults alike, and their remedies are identical. The only difference lies in the limitation of time in which they may move against the judgment. An adult is limited by the time set out in the statutes, 556 et seq.; a minor may proceed at any time before he reaches the age of 22. There are exceptions, however, to the minor's right to move for vacation in county court, such as when that court loses jurisdiction after transfer of land at guardian's sale (see Campbell v. Hickory, supra), a matter with which we are not here concerned.

Here, three years after a guardian's final account had been settled by order of court, a succeeding guardian filed his petition in the guardianship case to vacate said order. The ground was fraud practiced upon the court by the former guardian when procuring the order approving final account. The burden to establish fraud in such case is not lessened because the one upon whom the burden falls happens to be an infant. My attention has been called to no decision to the contrary.

A proceeding of this character is a direct attack upon the order of the county court. Cravens v. Lowe, 117 Okla. 83, 245 P. 50. But the minor must establish extraneous fraud, fraud collateral to the issues, and resulting directly in the entering of the judgment complained of. Stutsman v. Williams, 87 Okla. 64, 209 P. 406; Ross v. Breene, 88 Okla. 37, 211 P. 417; see, also, Calkin v. Wolcott, 182 Okla. 278, 77 P.2d 96. This rule applies alike to the judgments of all courts of record. The county court in vacating its orders and judgments is confined to the same statutes, section 556 et seq., as is the district court. Ozark Oil Co. v. Berryhill, 43 Okla. 523, 143 P. 173. As said by the court in Hartford, etc., Co. v. Goldberg, 178 Okla. 75, 61 P.2d 704, when speaking of an order of settlement and distribution in county court, "The right of the county court to vacate said decree for extraneous fraud, or other reasons, has been recognized by this court upon compliance with sections 556-564, O. S. 1931," citing authorities. And this is in accord with the statement in the case In re Myers' Estate, 93 Okla. 143, 219 P. 943, that: "The Constitution and statutes creating and regulating county courts of this state provide for original jurisdicion in all probate and guardianship matters, and their orders and judgments have the same force and effect and are subject to the same procedure for correction as district courts."

The procedure and grounds for challenging a final order approving the account of a guardian should be limited and confined within sections 556-564, supra, and the decision in the Higginbottom Case should be restricted to that extent. That portion of the opinion in that case which seems to recognize, as between wards and adults. a different standard of pleading with respect to allegations of grounds for vacating judgments should be disapproved and overruled. The opinion there cites no authority for such assertion, and I am aware of none.

Under the majority opinion there is no finality to a judgment of the county court

approving a guardian's final account until the minor reaches his majority and a settlement is had with him. Successive attacks on the final account of a discharged and released guardian may be made by his successors, immediate or remote, so long as the ward is a minor. I can find no well-considered authority for such rule.

The true rule is expressed in 12 R. C. L. 1154, as follows:

"* * * But the final account is very different. The ward is then of age or represented by another guardian, the account is passed upon at a formal hearing of which all interested parties have notice, and the final state of the account between the ward and his guardian is judicially determined. This is a judgment of court, which becomes res judicata, and can only be reopened on such proof of fraud or gross mistake as would justify opening any other judgment."

The facts as revealed by the majority opinion do not constitute that character of fraud that would warrant the vacation of a judgment. They no more indicate fraud than they indicate on the part of the parties concerned a disposition to protect the interests of the wards. The most damaging criticism that can be offered against the particular investment mentioned is that it was unwise, and that fact appears only in retrospect. Loss arising from an investment of this character constitutes little, if any, evidence of extrinsic fraud.

It is noted that the majority opinion affirms the judgment and approves the surcharge on a different theory from that of the trial court. The trial court in his findings made this observation, "while this transaction looks bad from the evidence and the deductions therefrom, yet there is no direct evidence of intentional fraud"; the trial court found "the guardian was improvident and derelict in his duty to his wards in purchasing a dairy farm * * * as an investment"; that "he made no reasonable inquiry as to the value before purchase"; that "at the time of the purchase there had been no order entered by the county court authorizing or approving the purchase * * *" and "since he made such purchase at his own risk, he may be surcharged for his improvident handling of the estate of the wards."

It is further noted that the opinion contains certain statements of fact that were not in evidence, that is, no such facts were established in this case. A transcript of the evidence given in a federal court where the defendant herein was a party was introduced in this trial, and the defendant here testified differently to what he had said before the federal court, and the opinion here contains statements of fact obtained from testimony given in the federal proceedings.

I think that the judgment appealed from should be reversed.