WALDREP et al. v. MERKLE et al.
(JOHNSTON et al., Intervenors).
No. 6105.

District Court, W. D. Oklahoma.
March 27, 1941.

Wendell G. Stockton and Owen F. Renegar, both of Oklahoma City, Okl., Paul W. Updegraff, of Norman, Okl., and Kenneth Abernathy, of Shawnee, Okl., for plaintiffs.

Thurman & Thurman, of Oklahoma City, Okl., for defendants.

Arrington & Miller and Shelton Skinner, all of Shawnee, Okl., for intervenors.

VAUGHT, District Judge.

This action was instituted by Tom C. Waldrep, as the guardian of Una and Dora Hembree, minors, Alva Hembree, and Irene Hembree, as plaintiffs, against John H. Merkle, their former guardian, and the Maryland Casualty Company, a corporation, to recover a judgment against the surety company on its guardian's bond, based upon a judgment rendered against John H. Merkle, as guardian, in the county court of Pottawatomie county.

W. R. Johnston and Nancy K. Johnston have filed petitions of intervention, by permission of the court, alleging that they are the owners by assignment of any interest which Irene and Alva Hembree have in any judgment recovered in this cause.

It is necessary, in order to present the issues in this case properly, to give a chronological statement of the circumstances in connection with the guardianship proceedings in the county court of Pottawatomie county.

A judgment of the county court, denying the petition of the then guardian praying for the vacation of the approval of Merkle's final account, as guardian, and surcharging his account for his acts as guardian according to law, was appealed to the district court of Pottawatomie county, which court reversed the judgment of the county court and entered judgment as prayed. The case was thereafter appealed to the Supreme Court of Oklahoma, which court affirmed the judgment of the district court, with slight modifications. A history of the case is stated carefully in the opinion of the Supreme Court in Merkle v. Waldrep et al., 184 Okl. 633, 89 P.2d 746.

In 1927, the father of the four Hembree children, Una, Dora, Irene and Alva Hembree, all minors, died, leaving to the said children a farm in Pottawatomie county,

and Burt Harris, a banker of Maude, Oklahoma, was appointed guardian of the four minor children by the county court of Pottawatomie county.

In the latter part of 1927, or the early part of 1928, oil was discovered and produced from said land so that it became very valuable. In the early part of 1929, there had accumulated in the hands of the guardian a considerable sum of money which, with other property belonging to the minors, was of the approximate value of $300,000.

In January, 1929, Leroy S. Cooper became county judge of Pottawatomie county and from the report filed by Harris as guardian learned that the guardian had in excess of $150,000 deposited in the bank at Maude, Oklahoma, with which bank the said Harris was connected.

Reference is made to the opinion of the Supreme Court, (Merkle v. Waldrep, supra) for a more detailed statement of the proceedings from this time up until August 19, 1929.

About this time, Cooper, as county judge, became interested in the purchase of a dairy farm in Missouri on behalf of the guardian to the extent that he took the guardian, Harris, to Missouri to examine the property. Harris had been approached by the owner of the farm in Missouri, with reference to the sale of the farm to the guardian, but in Harris' judgment it was not a proper investment to be made for the minors. In fact, he regarded it as a poor investment and so advised Judge Cooper.

The county judge apparently was taking an unusual interest in this estate and on the 19th of August, 1929, he arbitrarily discharged Harris as guardian, for no apparent reason, and appointed John H. Merkle as guardian, and notwithstanding there was more than $150,000 in cash which had come into the hands of Merkle as guardian, Cooper, as county judge, fixed Merkle's bond at $10,000.

On October 18, 1929, the county judge and Merkle closed the deal for the Missouri property, paying therefor the sum of $55,750. There was no order of record in the office of the county judge authorizing the purchase of this land, and there was no record showing that the sale had been confirmed, or approved, or that any notice had been given relative to the purchase of said land.

On March 28, 1930, Merkle gave a new bond in the sum of $240,000 with the Mary-land Casualty Company as surety, which was approved by the court.

On November 15, 1930, Merkle resigned as guardian. His final report was filed on December 5, 1930, and on January 2, 1931, he filed his supplemental final account, which accounts were approved and he was discharged as guardian, together with his surety.

In the meantime, the State National Bank, which upon the resignation of Merkle had been appointed guardian, had resigned as guardian and Walker Hembree had been appointed as guardian for Irene and Alva Hembree, minors, and Tom C. Waldrep had been appointed as guardian for Una and Dora Hembree, minors.

Walker Hembree and Tom C. Waldrep, as guardians, filed a petition in the county court on September 25, 1934, to vacate the order of the county court approving the final accounts of John H. Merkle entered on January 2, 1931, and to require the said Merkle to render an accounting as provided by law. A hearing was had upon this petition and on the 28th of November, 1934, the county judge denied the petition to vacate, whereupon, on the 30th of November, 1934, an appeal was taken to the district court of Pottawatomie county. On September 27, 1935, a judgment was rendered by the district court, reversing the judgment of the county court and vacating the order of the county court approving John H. Merkle's final account, and surcharging him in the sum of $55,750, with interest at the rate of six per cent. per annum from October 18, 1929, until paid, and further surcharging him with all fees received and allowed, with interest thereon at the rate of six per cent. per annum from the date of their receipt until paid. Merkle duly appealed from the judgment of the district court to the Supreme Court of Oklahoma, and said judgment of the district court was affirmed by the Supreme Court, with slight modifications, on the 25th of January, 1938. Merkle v. Waldrep, supra. No appeal bond, however was given and after the judgment of the district court, an application was made to the county court of Pottawatomie county for an accounting pursuant to said district court judgment.

On March 9, 1936, the county court of Pottawatomie county entered its order surcharging Merkle with $55,750 together with interest at six per cent. per annum from October 18, 1929, or a total of $77,190.08, and a further sum of $5,320.74, fees paid

Merkle as guardian, together with six per cent. interest from January 2, 1931, or a total of $84,160.49.

After the petition was filed by Walker Hembree and Tom C. Waldrep, as guardians, on the 25th of September, 1934, to vacate the order approving the final account of Merkle, entered on January 2, 1931, Merkle filed a motion in the county court of Pottawatomie county alleging that on the 26th day of September, 1929, prior to the purchase of the Missouri land, the county judge, Leroy G. Cooper, had entered an order directing Merkle to invest the funds of the minors, and asking for a nunc pro tunc order permitting him to file the journal entry of the order which had been made as he alleged on September 26, 1929, or nearly five years before. A hearing was had on the 28th of January, 1935, in the county court of Pottawatomie county and an order was made sustaining the motion for a nunc pro tunc order, finding that on the 28th of September, 1929, Leroy G. Cooper had made and entered an order directing Merkle, as guardian, to invest funds in his hands as such guardian in real estate, and said nunc pro tunc order was entered accordingly.

This order was appealed to the district court on the 4th of September, 1935. The record does not disclose what order was entered by the district court of Pottawatomie county on this appeal, and it is not material in determining the issues in this case.

It is significant that the only evidence that was introduced in the county court to support this nunc pro tunc order was the evidence of Judge Cooper, Mrs. Aiken, Judge Cooper's court reporter during the time he was county judge in the years 1929 and 1930, and John H. Merkle, guardian during Judge Cooper's administration. It appears from the testimony of these witnesses that the county clerk's records do not disclose that any such order was filed, and it further appears from this testimony that the final account, together with the canceled checks and vouchers, which Merkle testified he filed with the county court at the time of his discharge, were also missing from the clerk's files.

This is referred to, not because of its materiality, but merely as one of the circumstances surrounding this most unusual administration of an important estate.

On the 12th of January, 1935, the next of kin of the minors filed in the county court of Pottawatomie county their application alleging that the minors were residents of Cleveland county, Oklahoma, and asking that the guardianship case and proceedings be transferred from the county court of Pottawatomie county to the county court of Cleveland county. On the same date, the county court of Pottawatomie county made and entered its order transferring the guardianship case and proceedings to the county court of Cleveland county, and a certified copy of the order was duly filed in the county court of Cleveland county on January 22, 1935. There was also filed in the county court of Cleveland county a certified copy of the appearance docket entries, the transcript, and all the files, papers and orders in the guardianship proceedings pending in the county court of Pottawatomie county. Thereafter, Waldrep, as guardian, instituted a prohibition proceeding in the district court of Cleveland county against the county judge of Cleveland county, testing the removal proceedings from Pottawatomie county to Cleveland county, and from an adverse decision by the district court of Cleveland county, Waldrep, as guardian, appealed to the Supreme Court of Oklahoma, which court, in Waldrep v. Moses, Judge, 187 Okl. 475, 103 P.2d 503, affirmed the district court of Cleveland county.

The defendant Maryland Casualty Company has filed its answer to the petition of the plaintiffs, denying generally the allegations therein, and alleging that the judgment of the county court approving the final account of John H. Merkle, as guardian, and discharging the guardian and his surety, was a final order and was a complete discharge of this surety from any liability whatsoever on said guardian's bond. It also attacks the validity of the judgment rendered by the district court of Pottawatomie county sustaining the motion of the then guardians to vacate the order of approval of the final account of John H. Merkle and surcharging Merkle the sum set out in said judgment. It questions the jurisdiction of the county court of Pottawatomie county to render any judgment whatsoever against it, and prays that it may go hence with its costs.

Alva Hembree and Irene Hembree have filed their answers and cross-petitions to the petitions of intervention of W. R. Johnston and Nancy K. Johnston, and allege that while said assignments were made, they were procured through fraud and misrepresentation and in effect were part of

a scheme and a conspiracy to defraud the then minors out of their property. They furthermore deny that the transfers of their interest to the Missouri land were made in good faith, but allege said deeds were procured through fraud and misrepresentations, and they ask that said assignments be vacated and set aside under such terms as the court may direct, and that the deeds be canceled and disregarded.

The first question to be considered is the validity of the judgment rendered in the district court of Pottawatomie county surcharging Merkle. The record is clear that an application was made properly by the guardians of the minors, which minors had not attained their majority yet, to vacate and set aside the order of the county court approving the final account of Merkle and discharging the surety company, and praying for an accounting against Merkle. The county court, which had jurisdiction of the case at that time without question, denied the petition to vacate, and an appeal was duly taken to the district court of Pottawatomie county, which reversed the judgment of the county court and rendered judgment surcharging Merkle, as guardian, as follows:

"It is, therefore, the judgment of the court that the petition of the wards be sustained and the order approving said final report be set aside and the guardian surcharged, first, in the sum paid for said farm, namely, $55,750.00, with interest thereon from the date of such purchase until paid, at the rate of six per cent per annum, and, second, that he be further surcharged with all fees received and allowed, with interest thereon at six per cent per annum from the date of the receipt thereof until paid."

An appeal was taken from this judgment to the Supreme Court of Oklahoma which court on the 25th of January, 1938, in Merkle v. Waldrep, supra [184 Okl. 633, 89 P.2d 751], affirmed the judgment of the district court of Pottawatomie county and said in conclusion:

"It is suggested that since this cause was tried insurance has been collected on account of destruction by fire of one of the buildings on the Missouri farm, and the amount collected has been paid over to the present guardian for the benefit of said minor children.

"It is also suggested that one of the Hembree children has attained majority since this cause was tried, and has sold and con-veyed his interest in said Missouri land, and has thereby ratified the action of plaintiff in error in the purchase of said land, as to her interest therein.

"These matters are not shown in the record and may not be considered other than to say that if such suggestions be true plaintiff in error should as a matter of right be allowed to establish such facts, and if he does so should be given credit against the surcharge of his account for the amount of insurance and should be allowed such relief against the claim of the ward who may have transferred her interest in said Missouri land as law and justice may allow.

"The judgment of the trial court is modified so as to permit plaintiff in error on remand to make such showing as he may desire as to the new matters suggested, and, as so modified, is affirmed."

██ This judgment of the Supreme Court is binding upon this court.

The questions, therefore, as to the jurisdiction of the county court to pass upon the petition to vacate its former order approving the final account of Merkle and discharging the surety and surcharging Merkle, and as to the jurisdiction of the district court to review such judgment of the county court and to render the judgment surcharging Merkle, are not open to review by this court, since both jurisdictions have been approved by the judgment of the Supreme Court. This court, therefore, must recognize the judgment surcharging Merkle as a final judgment, subject only to the modifications indicated and suggested by the Supreme Court's opinion.

The next question that presents itself is whether or not the judgment rendered against Merkle is binding upon the surety company.

The surety company vigorously contended during the trial that it was not a party to the proceeding against Merkle; that it did not participate in the trial of the cause, and, therefore, is not bound by the decisions and judgments rendered against Merkle.

The evidence does disclose, however, that before the trial in the district court of Pottawatomie county on appeal from the county court, the surety company did have notice of this hearing; that one of its attorneys was present during the trial of the cause; that other representatives of the surety company had knowledge of this proceeding and were present at least part of the time during the trial of the cause; and,

that the appeal to the Supreme Court, while in the name of Merkle, was under the direction and at the expense of the surety company.

As to whether or not this judgment is binding upon the surety company is a question to be determined by the laws of Oklahoma, as construed by the highest court of the state.

In Southern Surety Co. v. Burney, 34 Okl. 552, 126 P. 748, 43 L.R.A.,N.S., 308, the Supreme Court held:

"Sureties on a guardian's bond are, in the absence of fraud, concluded by the decree of the county court, duly entered on a hearing on an accounting or final settlement, as to the amount of the principal's liability, although the sureties are not parties to the accounting.

"The general bond required of a guardian is intended to secure to the infant the proper accounting for all funds, from whatever source they may be derived, that may come into the hands of the guardian; the special or 'sales bond' required by statute is cumulative security, required and given for the benefit of the ward; and a failure on the part of the guardian to account for the proceeds of a sale of real estate will not excuse or absolve his sureties on his original or general guardian's bond."

The same rule has been sustained in other Oklahoma decisions as follows: Title Guaranty & Surety Co. v. Slinker, 35 Okl. 128, 128 P. 696; Cabell v. McLish, 61 Okl. 224, 160 P. 592; Smith v. Garnett, 62 Okl. 76, 161 P. 1083; Southwestern Surety Ins. Co. v. Richard, 62 Okl. 122, 162 P. 468; Egan v. Vowell, 66 Okl. 61, 167 P. 205; Driskill v. Quinn, 69 Okl. 77, 170 P. 495; Title Guaranty & Surety Co. v. Cowen, 71 Okl. 299, 177 P. 563; Guynes v. Fooshee, 77 Okl. 306, 188 P. 659.

In Southwestern Surety Ins. Co. v. Richard, supra, the court held: "Sureties on a guardian's bond, in the absence of fraud, are concluded by the decree of the county court, duly entered on a hearing on an accounting, or final settlement, as to the amount of the principal's liability, although the sureties are not parties to the accounting."

In Southern Surety Co. v. Jefferson, 73 Okl. 7, 174 P. 563, the court said: "In the settlement of a guardian's account in the county court having jurisdiction thereof, the surety upon his bond as guardian is not a necessary party to such proceeding or entitled to notice thereof, and, in the absence of fraud, it is conclusive as to the adjudication therein made."

In Southern Surety Co. v. Williams, 105 Okl. 44, 231 P. 293, the court held: "In the absence of fraud the surety on a guardian's bond is concluded by a judgment of the county court, otherwise valid and not appealed from, fixing liability of the guardian."

It is clear, therefore, to this court that the judgment against Merkle rendered in the district court of Pottawatomie county and affirmed by the Supreme Court is binding upon the surety company. There is no evidence in this record showing fraud or mistake in obtaining this judgment.

It is contended by the surety company that, since Merkle was appointed guardian on the 19th of August, 1929, and the Maryland Casualty Company bond was executed on March 28, 1930, this surety would not be liable for any defalcation prior to March 28, 1930.

That question has also been determined by the Supreme Court of Oklahoma in Greer v. McNeal, 11 Okl. 526, 69 P. 893, in which the court held, quoting from the fourth syllabus:

"As a general rule, sureties on the bond of a public officer are not liable for any official delinquency or default of the principal occurring prior to the execution of the bond. But this general rule has no application to an administrator's bond, because the purpose for which an administrator's bond is given is entirely different. The term of office of a public officer is definite and certain, while an administrator has no fixed tenure of office. It is a continuous trust or employment from the date of his appointment until the close of the administration. The condition of an official bond is that the principal shall faithfully perform the duties of the office to which he has been elected or appointed. The bond of an administrator is that he shall faithfully execute the duties of the trust according to law. Hence the sureties on an administrator's bond, conditioned as the bonds were in this action, are liable for whatever is properly chargeable to the administrator in his official capacity, and it is not essential to prove that the funds or property so chargeable were actually on hand and intact at the time the second or additional bond was executed. If the moneys or property are shown to have come to the hands of the administrator in his official capacity, and he has not

properly disposed of or accounted for the same, he is bound to do so on a final settlement; and the sureties upon his bond, no matter when such bond was executed and approved, are held liable for the faithful performance and execution of such trust."

The same holding was made in Southern Surety Co. v. Burney, supra, in which the court said at page 750 of 126 P.: "Is the surety on a substitute bond, for a former general bond, liable for defaults occurring before the execution of the latter? After a careful review of the authorities, we feel warranted in answering the question in the affirmative. It must not be forgotten in this connection that we are dealing with a guardian's bond, as distinguished from the bond given by public officials. There is a marked distinction, recognized by all, between bonds given by public officials and bonds given by administrators, executors, and guardians."

In People's Bank & Trust Co. v. Nelson, 37 Okl. 500, 132 P. 493, the court held: "Where a guardian, besides the bond given when he was appointed, gave two other bonds conditioned the same as the first, as additional security for the performance of his duties as guardian, all of the sureties upon the several bonds could be joined in one suit, to recover the amount due from the guardian to his successor upon his removal as guardian."

It is apparent then that under the Oklahoma statutes, as construed by our Supreme Court, the test is what amount was due from Merkle at the time he filed his final account. If at the time he filed his final account, he failed to account for any property which had come into his hands as guardian, then the delinquencies would be as of the date of his final account and not when the misappropriation of funds actually occurred, and the obligation of the bond is that he shall faithfully account, (at the time of his final account) for all property which has come into his hands.

The courts of other states, with few exceptions, have held to the same effect.

In the case of Hutchcraft v. Shrout's Heirs, 1 T.B.Mon., Ky., 206, 15 Am.Dec. 100, the court held: "Where two bonds were given by the same guardian, at different times, all the sureties on both bonds were held liable for the whole amount."

In Brown et al. v. State of Kansas ex rel. C. B. Graves, 23 Kan. 235, the Supreme Court of Kansas held: " * * * that the sureties on such new bond are liable for any failure of the administrator to after-ward pay over said $394.60, as required by law, and by the order of the probate court; although the administrator may have in fact appropriated the money to his own use, at some time prior to the execution of said new bond."

In Douglass v. Kessler et al., 57 Iowa 63, 10 N.W. 313, the Supreme Court of Iowa held: "Under such circumstances, we understand the rule to be that the sureties on the additional bond are liable for the default of the guardian previous to the filing of such bond." Citing authorities.

In Dugger v. Wright, 51 Ark. 232, 11 S.W. 213, 14 Am.St.Rep. 48, the Supreme Court of that state held: "Where there are two sets of sureties of an executor or administrator upon bonds given at different times, both sets are answerable for breaches committed prior to the execution of the second bond."

In Foster v. Wise, 46 Ohio St. 20, 16 N.E. 687, 15 Am.St.Rep. 542, the Supreme Court of Ohio held: " * * * that the sureties on the new bond are liable for the indebtedness of the executor to the estate for all the assets so collected and converted to his own use."

In Bellinger v. Thompson et al., 26 Or. 320, 37 P. 714, 40 P. 229, the Supreme Court of Oregon held: "Sureties on the bond of an executor conditioned for the faithful performance of his duties are liable for assets misapplied before the execution of the bond."

In McIntire, Probate Judge v. Linehan, 178 Mass. 263, 59 N.E. 767, the Supreme Court of Massachusetts held: "Sureties on a trustee's bond are liable for failure of the principal to account for assets received before the execution thereof."

In Abshire et al. v. Rowe et al., 112 Ky. 545, 66 S.W. 394, 56 L.R.A. 936, 99 Am.St. Rep. 302, the Supreme Court of Kentucky held: "Where an additional guardian's bond is executed, on motion of a surety in the original bond, for the purpose of releasing him from liability for the guardian's future acts, the sureties in the two bonds are jointly liable for past and future acts of the principal, as if all had signed the original bond, except that the motioner is liable only for the guardian's past acts."

The same rule has been upheld in Ellyson v. Lord et al., 124 Iowa 125, 99 N.W. 582; Matthews et al. v. Mauldin, 142 Ala. 434, 38 So. 849, 4 Ann.Cas. 344; Commonwealth to Use of Hanes v. Fidelity & Deposit Co. of Maryland, 224 Pa. 95, 73 A. 327, 132

Am.St.Rep. 755; Remington, Ordinary v. Hopson, 137 Ga. 95, 72 S.E. 918.

■ The next proposition raised by the defendant is that after the judgment rendered by the district court of Pottawatomie county, and no supersedeas bond having been filed on the appeal, the judgment was transmitted to the county court of Pottawatomie county, and the county court entered its judgment in conformity with the judgment of the district court by calculating the interest due on the principal amounts surcharged against the guardian, after the guardianship proceedings had been transferred from Pottawatomie county to Cleveland county. This was more in the nature of an accounting than a judgment. After the rendition of the judgment by the district court, this judgment could not be modified in any manner by the county court, but the determination of the amount of interest and the amount of fees paid to the guardian were very easy of calculation and the effect of the order entered by the county court, after entry of the judgment by the district court, and while the case was pending in the Supreme Court, was nothing more than a determination of the amount of interest due and the amount of fees paid and no evidence has been offered in this case to contradict the correctness of said determination by the county court, except as herein stated. That is a matter that this court could determine because it is peculiarly a matter of reference to records and simple calculation.

At the time the petition was filed in the county court of Pottawatomie county to remove the guardianship case to Cleveland county, there is no question but that the district court had jurisdiction of this particular matter, and the judgment of the district court, as affirmed by the Supreme Court, is a final judgment. What was done in the county court after the judgment was rendered in the district court is immaterial. It was nothing more than a determination of the amount due in accordance with the findings of the district court.

■ In the Supreme Court's opinion, however, it is stated that a suggestion had been made that certain insurance money had been paid to the guardian as a result of the destruction by fire of some of the Missouri property. The record shows that $315.72 was received by the guardian as a result of the adjustment of the fire loss, and that sum should be deducted from the amount surcharged to Merkle. It also, was

suggested that one of the Hembree children, evidently referring to Irene, had sold and conveyed her interest in the Missouri land and, therefore, had ratified the action. That element of the case will be discussed later.

The next question for determination is whether or not the assignment made by Irene Hembree to Nancy K. Johnston should be set aside.

The record discloses that after the resignation of Merkle as guardian, in the latter part of the year 1930, the State National Bank of Shawnee, Oklahoma, was appointed guardian. This guardianship was handled by the trust department of said bank and W. R. Johnston, or Ross Johnston, was the trust officer. Louis B. Van Hoesen was Johnston's assistant trust officer. During this three-year period, Johnston had every opportunity to become familiar with the details of the estate of the Hembree minors, and after the resignation of the bank, as guardian, Johnston had various business transactions with Irene Hembree, although she was either a minor or had just attained the age of eighteen years. Some five or six different pieces of property in Maude and Shawnee, Oklahoma, were purchased by Johnston from Irene Hembree at a very small price. All of these transactions were handled through one Bill Morgan, who was a real estate broker.

Within a few months after the judgment was rendered by the district court of Pottawatomie county, Morgan was attempting to induce Irene Hembree to sell her interest in this judgment to Ross Johnston. Johnston testified that he had nothing to do with the transaction but that Morgan constantly was urging him to buy this interest. However, on the day when the assignment actually was executed by Irene Hembree, Morgan went to Irene Hembree's home, taking a pint of liquor with him. Miss Hembree testified that he insisted she drink with him. She finally agreed, and she and Morgan drank the pint of liquor. He said nothing to her at her home about the sale of her interest, but invited her to go with him in his car to see an oil well in the vicinity of Shawnee. After they had gone out to the well, he produced another pint of liquor and urged and insisted that she and he drink it, and they consumed that pint. After she was under the influence of the liquor, Morgan discussed with her the sale of her interest in the judgment to Johnston and took her directly to Johnston's office. She had

no one to advise her as to the propriety of executing the assignment. In Johnston's office were Johnston, his stenographer, Gladys Fortson, and his brother-in-law, Paul P. Loy. When she arrived at the office, the assignment had been prepared and Johnston also had prepared a warranty deed, conveying her interest in the Missouri property. The assignment was made to Nancy K. Johnston, Ross Johnston's wife, and the checks had been drawn and signed by Nancy K. Johnston, $1,000 to Irene Hembree, and $500 to Morgan and Walker Hembree, his partner, as a commission. Irene Hembree admitted the execution of the assignment and the deed, but testified she was in such a state of mind that she did not realize what she was doing, but thought by signing the instruments she could get rid of Morgan. It was explained to her that the sole purpose of the deed to the Missouri property was in order that it could be surrendered to the insurance company in settlement of this judgment.

This whole transaction should be condemned in the strongest terms. Here was a girl just past eighteen years of age with no business experience, except that she had been led to believe it was her duty to sign anything presented to her, and, naturally, she felt that Johnston, who had been her guardian for three years, would protect her interest. Morgan told her that she would never collect anything out of the judgment, that it was practically worthless, and if she could get $1,000 out of the deal she would be that much ahead.

The fact that this deed and assignment had been prepared before Irene Hembree was taken to Johnston's office, and the further fact that the checks had been drawn and signed by Nancy K. Johnston, indicates that the agreement had been reached between Johnston and Morgan prior to taking Irene to Johnston's office. The $1,000 that was paid to Irene was approximately five per cent. of her interest in this judgment, and the fact that Johnston paid Morgan, or Morgan and Walker Hembree, without the knowledge of Irene Hembree, a commission of $500 on the $1,000 transaction, not only confirms Morgan as the agent of Johnston but is strong evidence of a conspiracy to get this property.

▮ The court cannot overlook the fact that it had been "open season" in Pottawatomie county as to the Hembree heirs ever since this farm became valuable property. Here was an estate of almost a half million dollars, with practically all of the children minors, but before a single minor attained his majority, that child's interest in this estate was practically gone, and at the trial, Irene Hembree testified that she was then working as a maid at a hotel. It is apparent from this record that these minors had no protection from friends, attorneys, guardians, or the county court. The peculiar circumstances under which this assignment was made from Irene Hembree to Nancy K. Johnston show that she was misled, deluded, placed under the influence of intoxicating liquor, had the value of her estate misrepresented, and was induced to execute the assignment and the deed when she was not in a position to exercise even reasonable judgment. The assignment should be set aside, for the reasons stated.

▮ It is apparent to the court that the deed to the Missouri property was executed at the sole instance of Johnston and Morgan, and cannot be construed as a ratification of the acts of Merkle in purchasing the Missouri farm.

At the trial of this case, it was agreed that the amount of fees received by Merkle was $4,735.

It is, therefore, the judgment of this court

(1) That the plaintiffs have judgment against the defendant insurance company in the sum of $55,750 less $315.72, the sum collected on an insurance adjustment, together with interest at six per cent. from October 18, 1929, the date of the purchase of the Missouri farm, and for the further sum of $4,735, fees paid to Merkle, together with interest at six per cent. from January 2, 1931.

(2) That the assignment and the deed executed on the 9th day of April, 1936 by Irene Hembree to Nancy K. Johnston be set aside and held for naught, but that Irene Hembree be required to pay to Ross Johnston the consideration which she received in said transaction, to-wit: $1,000, without interest.

The transaction with reference to Alva Hembree has been withdrawn from this court by settlement heretofore approved.

Findings of fact, conclusions of law, and a proper form of judgment, consistent with this opinion, may be submitted within fifteen days from this date.